CORRECTED OPINION

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lewis Miller SMYTH, III and Glenn B.**
**Bavousett, Defendants-Appellants.**

**No. 76–2314.**

United States Court of Appeals,
Fifth Circuit.

May 18, 1977.

Rehearing and Rehearing En Banc
Denied July 20, 1977.

Paul F. Strain, Baltimore, Md. (Arnold M. Weiner and J. Frederick Motz, Baltimore, Md., on brief) for appellants.

Robert J. Aumiller, Asst. Atty. Gen., Baltimore, Md. (Francis B. Burch, Atty. Gen. Jon F. Oster, Deputy Atty. Gen. of Md., Baltimore, Md., on brief) for appellees.

Before WINTER, BUTZNER and HALL, Circuit Judges.

**1180**

James R. Claunch, Fort Worth, Tex., for Bavousett.

Charles Michael Mallin, Joseph A. Calamia, Woodrow W. Bean, Sr., El Paso, Tex., for Smyth only.

Michael P. Carnes, U. S. Atty., Gerhard E. Kleinschmidt, John W. Sweeney, Jr., Asst. U. S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellants Lewis Smyth and Glenn Bavousett are former officers of Norman Harwell Associates, Inc. (NHA), a corporation engaged in the preparation and publication of technical materials. They were charged in an eight count indictment with conspiring to defraud[1] and with defrauding[2] the United States by overbilling the United States Army Aviation Material Command (AVSCOM) on two cost-plus contracts[3]

---

1. 18 U.S.C. § 286 (1970).

2. *Id.* § 287.

3. Under the contracts NHA agreed to develop, write and deliver certain technical manuals to AVSCOM at an agreed composite billing rate

which NHA had with AVSCOM. The over-billing was allegedly done intentionally by appellants and other officers and employees of NHA who systematically replaced the company's original employee labor distribution cards with a set of forged cards on which time formerly billed by NHA to private clients was shown as having been spent on AVSCOM work. The appellants were tried and convicted along with other participants in the scheme and sentenced to concurrent five-year terms of imprisonment on each count.

On appeal appellants' principal arguments are (1) that the lengthy pre-indictment delay denied them due process, (2) that the lower court erred in admitting into evidence certain FBI computer printouts, and (3) that the prosecutor's closing argument was improper and denied them a fair trial.[4] We reject each of these arguments and affirm.

## I. Pre-Indictment Delay

The indictment was returned on August 7, 1975. In Count I it charged a conspiracy running from June 28, 1968, through September 15, 1971, while Counts II through VIII charged substantive offenses based on false billings during 1970. (These false billings constituted some of the overt acts specified in the conspiracy count.) Thus, there was a period of three years and ten months between the termination of the conspiracy (the most recent offense) and the return of the indictment. Though they concede that the indictment was returned well within the five-year statute of limitations period,[5] appellants claim that under *United States*

v. *Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478–79 (1971), the indictment should nonetheless have been dismissed because the delay substantially prejudiced their right to a fair trial. The prejudice is said to have resulted from the accidental destruction by NHA employees of certain corporate records in 1973, including certain computer printouts, which appellants claim might have demonstrated that the AVSCOM billings were not inflated.[6] While it is admitted that the Government did not destroy these records, appellants argue that the Government knew of the records' existence and importance and thus was negligent in failing to insure their safe keeping.

We reject this argument for two reasons. First, the law identifies two factors which must be considered in evaluating a complaint of pre-indictment delay: (1) that defendant incurred substantial prejudice as a result of the government's delay, and (2) that the prosecution had intentionally employed the delay to gain a tactical advantage. *United States v. Avalos*, 541 F.2d 1100, 1107 (5th Cir. 1976). *See also United States v. Duke*, 527 F.2d 386 (5th Cir. 1976); *United States v. Butts*, 524 F.2d 975 (5th Cir. 1975). *But see Gravitt v. United States*, 523 F.2d 1211, 1216 (5th Cir. 1975) ("negligence is counted against the government but is weighted less heavily"). There has not even been an allegation here that the delay was "an intentional device to gain tactical advantage over the accused." *Marion*, 404 U.S. at 324–25, 92 S.Ct. at 465, 30 L.Ed.2d at 478–79. The record clearly shows that, while the Government investi-

for each type of employee who worked on the contracts. The rate was designed to include labor, overhead and profit. Thus NHA was required to keep track of the time employees spent on AVSCOM work and then to bill AVSCOM at the composite rate for the total hours.

4. Appellants also question the sufficiency of the evidence, the trial court's failure to grant their severance motions, the FBI's refusal to discuss the case with them, and certain jury instructions. We have examined each of these

claims of error and find them to be totally without merit.

5. *Id.* § 3282.

6. The appellants and the other officers and employees of NHA who were involved in the fraudulent billing scheme left NHA in 1971 and were thus not involved in the subsequent destruction of the records. The records were simply thrown out to provide needed working space, and the NHA employees in charge were under the impression that the records were no longer important.

gation of NHA began in 1971, it was not until April 1975 that a witness came forward and related to investigators how the fraud was perpetrated. Prior to that time the FBI knew that NHA's records had been tampered with but did not know who the culprits were. Thus, the delay in the present case was in no way related to any Government misfeasance.[7]

■ Second, even if the Government had been responsible for the pre-indictment delay, we believe that appellants have failed to show substantial prejudice. The fact is that, while appellants claim the missing records would have exonerated them, their proffer failed to support their contention. Indeed, the record indicates that all the pertinent records were before the court. The original set of employee time cards and the forged set were placed in evidence, as were the computer runs which tied the forged set of cards into the vouchers presented to AVSCOM. These were the critical source materials, for they clearly demonstrated that someone copied the original cards submitted by the employees and changed them to show additional work being performed on AVSCOM contracts. They also established that AVSCOM was subsequently billed on the basis of these forged cards. Absent some explanation as to how the destroyed computer printouts could have placed an innocent light on the forged cards and the billings based on these cards, appellants' claim that they were prejudiced is speculative at best and clearly insufficient to demonstrate prejudice. *See, e.g., Butts,* 524 F.2d at 977; *United States v. McGough,* 510 F.2d 598, 604 (5th Cir. 1975).

II. *The FBI Computer Printouts*

At trial two sets of computer printouts prepared by the FBI were introduced into evidence by the Government. One set tabulated the information disclosed by the employee labor distribution cards—the origi-

nals and the forged cards—to show the discrepancies between them. Over each column of the first group of printouts was a heading, and the inside cover of the exhibit contained a key which explained the meaning of each heading. The key was as follows:

MEANING OF HEADINGS

| LISTING HEADER | DESCRIPTION |
|---|---|
| Voucher Hours = | Billed by NHA per Voucher No Time Card Support |
| Worked Hours = | Original Time Taken From Time Cards |
| Billed Hours = | False Time Taken From Time Cards |
| Amount of Voucher = | Billed by NHA per Voucher No Time Card Support |
| Amount for Hours Worked = | Original Cost Supported by Time Cards |

The second set of printouts tabulated the information on the billings submitted to AVSCOM and cross-referenced this information to the original and forged employee labor distribution cards. The exhibit was designed to show as to each voucher how much time the Government was charged for in excess of the time actually spent on AVSCOM work. The printouts contained columns with the following headings: "original data," "falsified data," "falsified data summarized," and "difference between original/false."

Appellants objected to the use of the two sets of printouts on the ground that the column headings and the explanatory key constituted improper conclusions which invaded the province of the jury. The objection was overruled, and the exhibits were admitted. In charging the jury at the end of the trial, the court instructed that these computer printouts were not evidence and were only received as summaries of the labor distribution cards—original and forged—and the billings, which were in evidence. Appellants contend that this instruction failed to cure the error earlier committed in allowing the jury to be exposed to the conclusory matter appearing on the printouts.

---

**7.** Appellants characterize the Government's conduct as negligent; however, the alleged negligence relates to the failure of investigators to seize the documents which were later de-

stroyed. At no point did the appellants make a showing that the Government's negligence caused the pre-indictment delay.

The evidentiary use of summaries at trial is controlled by Fed.R. of Evid. Rule 1006, which provides:

> The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.[8]

Prior to the adoption of Rule 1006 the law governing the evidentiary status of summaries and therefore their use was unsettled. Striking differences had developed within and among the circuits, no doubt causing the district courts to resort to various approaches in handling summaries at trial. In theory the scope of judicial treatment ranged from the view that summaries were not evidence, *see e.g., Conford v. United States,* 336 F.2d 285, 288 (10th Cir. 1964), to the view that they were. *See e.g., Hartford Accident and Indemnity Co. v. Collins Dietz-Morris Co.,* 80 F.2d 441 (10th Cir. 1935). Among the opinions treating summaries as evidence the more liberal school required no underlying documents to be received in evidence as a foundation for the summaries. All that was required was that the underlying documents be made available to opposing counsel for cross-examina-

tion purposes. *See e.g., In Re Shelley Furniture, Inc.,* 283 F.2d 540, 543 (7th Cir. 1960). The summaries were therefore given an independent evidentiary significance and could be introduced on the strength of the preparer's foundation testimony, thereby avoiding the need to receive voluminous documentary evidence at trial.[9] Under the *most restrictive view summaries were never accorded the position of evidence.* Rather, they were treated as jury aids designed to clarify voluminous documentary evidence already in the record and to provide a manageable perspective for the jury in its deliberations. Juries were not permitted to see the summaries unless every fact reflected was established by evidence in the record. *See, e.g., United States v. Moody,* 339 F.2d 161 (6th Cir. 1964); *Hoyer v. United States,* 223 F.2d 134 (8th Cir. 1955).

One viewing the Fifth Circuit opinions cannot clearly ascertain its position regarding the status of such summaries either. This Court has sometimes followed the liberal view; on occasion it has followed the more restrictive view. *Compare Greenhill v. United States,* 298 F.2d 405 (5th Cir. 1962) *and New Amsterdam Casualty Co. v. W. D. Felder and Co.,* 214 F.2d 825 (5th Cir. 1954) *with United States v. Prevatt,* 526 F.2d 400, 404 (5th Cir. 1976) *and United States v. Diez,* 515 F.2d 892, 905–06 (5th Cir. 1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976).[10]

**8.** The new Federal Rules of Evidence became effective on July 1, 1975, prior to the trial of this case.

**9.** This approach is in keeping with liberal common law treatment of summaries espoused by Professor Wigmore:

> Where a fact could be ascertained only by the inspection of a large number of documents made up of very *numerous detailed statements*—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summari-

ly the net result. Such a practice is well established to be proper.

> Most courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available . . . .

4 Wigmore § 1230 (4th ed. 1950). Wigmore's view was codified by Rule 1006. *See Rules of Evidence,* 56 F.R.D. 183, 345–46 (1972). (*Advisory Committee's Note.*)

**10.** Prior to the implementation of the new Federal Rule this court's application of common law principles governing the reception of summaries as evidence varied. We have, for example, referred to such summaries as either "primary proof" or "secondary proof" in approving

■ Prior uncertainties regarding the status of summaries are now resolved by Rule 1006. Although the word "evidence" does not appear in its text we construe the rule as treating summaries as evidence under circumstances where, in the court's discretion, examination of the underlying documents in a trial setting cannot be done conveniently. This construction is compelled by the rule's history and by the fact that the rule requires only the *availability* of the underlying documents.

■ That the court below did not apply the rule so as to receive the summaries in evidence is understandable in light of the conflicting case law. We are convinced, however, that under any application of Rule 1006 the use of these summaries at trial was not error. In applying the rule the trial court followed the most restrictive approach indicated in our prior opinions. This approach, from the appellants' perspective, was calculated to be the least prejudicial.

The court could have excluded all of the underlying documents and received the summaries as evidence. The court chose, however, to admit these documents in evidence and to instruct the jury that the summaries were not evidence.[11] Moreover, in light of appellants' objections to the characterizations the Government utilized in the summary headings the cautionary instruction given by the trial judge was entirely appropriate, if not necessary, for it neutralized their possible prejudicial effect. Thus, whether or not the trial court had received the summaries as evidence under Rule 1006, the cautionary instruction, insofar as it emphasized that the characterizations were not evidence, would have made the remainder of the summaries admissible under the rule.[12]

In fine, we reject appellants' claim that the district court's treatment of the summaries unduly prejudiced their trial. In permitting the jury to utilize them, the court proceeded well within the discretion accord-

trial court treatment of summaries as evidence. *See McDaniel v. United States,* 343 F.2d 785, 789 (5th Cir.), *cert. denied,* 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965); *Azcona v. United States,* 257 F.2d 462 (5th Cir. 1958). At times we have required that the underlying source documents be in evidence before the summaries could properly be received. *McDaniel, supra.* We have also predicated admissibility on a mere showing that such underlying sources were made available for inspection by the opposing side. *Cooper v. United States,* 91 F.2d 195 (5th Cir. 1937); *New Asterdam Cas. Co. v. W. D. Feldon & Co.,* 214 F.2d 825 (5th Cir. 1954). These variations in the treatment of summaries are manifested by the inconsistent references to them as either "competent evidence", *Ward v. United States,* 356 F.2d 938 (5th Cir. 1966); *Barrick v. Pratt,* 32 F.2d 732 (5th Cir. 1929), or useful tools through which a jury can more readily comprehend the underlying evidence. *United States v. Diez,* 515 F.2d 892, 905–06 (5th Cir. 1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976); *United States v. Lawhon,* 499 F.2d 352, 357 (5th Cir. 1974), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820 (1975). Through this disaccord we recently held that such summaries may be used only where the jury is instructed that the summaries themselves are *not* evidence. *See United States v. Prevatt,* 526 F.2d 400, 404 (5th Cir. 1976); *Diez, supra; Lawhon, supra. But see EAC Credit Corp. v. King,* 507 F.2d 1232 (5th Cir. 1975).

11. Implicit in Rule 1006 is the notion that a trial judge may choose this alternative. In the circumstances of a given case the court may feel that the jury, or the court, itself, in a bench trial, ought to consider the source documents in resolving a fact issue and that, on balance, a summarization of such evidence would add to or detract from the proper weight or emphasis to be given it.

12. We do not opine on the extent of error that would have been created had *these* summaries and characterizations been received as evidence without *any* cautionary instruction being given. It would seem, though, that because summaries are elevated under Rule 1006 to the position of evidence care must be taken to omit argumentative matter in their preparation lest the jury believe that such matter is itself evidence of the assertion it makes. *See Ping v. United States,* 407 F.2d 157, 160 (8th Cir.) *cert. denied,* 395 U.S. 926, 89 S.Ct. 1784, 23 L.Ed.2d 244 (1969); *Lloyd v. United States,* 226 F.2d 9, 17 (5th Cir. 1955). We think that the framers of the rule clearly contemplated a pre-trial resolution of any issues that may be raised concerning the use of summaries. By requiring that the underlying documents be made available to opposing counsel, the rule encourages counsel to eliminate objectionable matter and to stipulate to the form of the summary. Through this process the frequency of objections such as those raised here should be greatly reduced.

 

ed it under Rule 1006. The original and forged employee labor distribution cards were in evidence. The computer printouts merely tabulated the information they disclosed. As for the headings, they accurately explained the significance the Government attached to the tabulations. In this sense the headings reflected certain assumptions, but these assumptions were amply supported by the evidence already before the jury. By instructing the jury that the summaries were not evidence, however, the trial judge took one further step to insure that the jury would not rely on the conclusory matter as independent proof of the appellants' guilt.

### III. The Prosecutor's Closing Argument

During his closing argument the prosecutor said: "You want to say we approve of this type of conduct in dealing with the Government? Let Uncle Sam take the ride, but when you think about that, think of that, that's your tax money, that's your tax money being kicked in here." Appellants submit that this argument was an improper attempt to appeal to the personal prejudices of the jurors as taxpayers and that it was so prejudicial they were denied a fair trial.

 We view the prosecutor's pitch as an unprofessional and highly improper appeal to the passion and prejudices of the juror. *See Handford v. United States,* 249 F.2d 295 (5th Cir. 1957); ABA Standards Relating to the Administration of Criminal Justice, The Prosecution Function § 5.8(c) (1972). But we must consider errors of this sort in the context of the entire record to determine whether or not the substantial rights of an accused were affected. *See Handford, supra;* Fed.R.Crim.P. 52(a). In the present case, the court sustained the objection and gave an appropriate cautionary instruction.[13] More importantly, though, unlike the situation in *Handford,* this clearly was not a close case. The evi-

dence against appellants was strong, and we are therefore convinced that the error was harmless.

AFFIRMED.

---

**13.** The court instructed the jury as follows: Members of the jury, you are not to consider that statement for the reason that it's a personal appeal to you. It's alright for him to argue that tax money is paying for it but [not] the portion about your tax money hurting you. It will not be considered by you because you're not supposed—you're supposed to view the matter impartially. Record at 1107–08.