RICHEY I. BRUNSKILL AND CARMEN J. BRUNSKILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brunskill v. Commissioner
Docket Nos. 7930-78, 7931-78.
United States Tax Court
T.C. Memo 1982-645; 1982 Tax Ct. Memo LEXIS 103; 45 T.C.M. (CCH) 54; T.C.M. (RIA) 82645; November 8, 1982. Dougal C. Pope, for the petitioners. John F. Eiman and Marilyn S. Ames, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax under section 6653(a), [1] as follows: *104 Sec. 6653(a)
Year
Deficiency
Addition to Tax
1972
$10,168.30
$508.42
1973
5,190.65
259.53
1974
95.59
1976
621.26
After concessions by the parties, the issues remaining for decision are as follows: 1. Whether and in what amounts petitioners realized income during 1972 and 1973 by purchasing items for their personal use with funds belonging to petitioner Richey I. Brunskill's employer; and 2. Whether any part of any underpayment of tax for 1972 or 1973 was due to petitioners' negligence or intentional disregard of the law within the meaning of section 6653(a). FINDINGS OF FACT Petitioners Richey I. Brunskill and Carmen J. Brunskill were husband and wife during the taxable years in question and they filed joint Federal income tax returns for each of those years. At the time their petitions in these cases were filed, they resided in Spring, Texas. For all of the years in issue, petitioners computed taxable income using the cash method of accounting. During the taxable years 1972, 1973, and 1974, petitioner Richey I. Brunskill (petitioner) was employed by the General Tire and Rubber Company of Akron, Ohio (General), as the company's *105 vice president and manager of replacement tire sales. Petitioners resided in Ohio during that period. General Tire Service, Inc. (Service), located in Dallas, Texas, was a subsidiary of General. From 1949 until November 1973, the president of Service was Edward B. Daugherty (Daugherty). Petitioner had worked in the Houston and Dallas areas in the early 1950's and had met Daugherty during that time. During 1972 and 1973, petitioners and Daugherty participated in an embezzlement scheme at the expense of General and Service. Pursuant to that scheme, petitioners obtained various items from several department and other stores in Dallas. These items included clothing, luggage, liquor, furniture, a mounted pistol, a freezer, and a ceramic statue of a peacock. Some of these items were selected by petitioners themselves while they were in Dallas, and others were selected by Daugherty and sent to petitioners at their home in Ohio. Petitioners never paid for any of these items; they were charged, instead, to Daugherty or to Service, and Service then paid the stores when the bills were received. On Service's books, the purchases of the several items were debited to the tire purchase *106 account at Daugherty's direction. The tires supposedly represented by these entries did not actually exist. These debits to Service's tire purchase account were partially offset by credits to that account pursuant to credit memoranda issued by General and approved by petitioner. The fictitious tire purchases not offset by these credits were periodically transferred to the inventory account, which was then correspondingly adjusted. Respondent determined that petitioners realized gross income "from the credits issued to offset personal purchases" in the amounts of $22,072.57 in 1972 and $10,248.83 in 1973. These amounts were computed by respondent by adding the amounts of the credits issued from General to Service. The sum of these credits approximates the sum of the retail prices of the merchandise obtained by petitioners for each of the years in issue. Respondent also determined that petitioners were liable for additions to tax for 1972 and 1973 for negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). OPINION Money embezzled by *107 an employee is gross income to him. James v. United States,366 U.S. 213, 219 (1961). A gain from such illegal activity "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin v. United States,343 U.S. 130, 137 (1952). Respondent has determined that petitioners realized gross income as a result of their embezzlement scheme. The burden is on petitioners to prove that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioners have not carried that burden. It is stipulated the petitioner received merchandise described in sixteen separate invoices. He did not deny in his testimony that he received other merchandise and does not seriously contend otherwise. In fact, petitioner admitted that he did so and that he could not make an estimate of the sum of the value of such merchandise because he had "no idea" as to the amount. We, therefore, sustain respondent's determinations. *108 Petitioners argue that the items they received were gifts from Daugherty and, as such, were excludable from gross income. We find this argument unconvincing. A gift, within the meaning of section 102(a), is a transfer made from a "detached and disinterested generosity." Commissioner v. Duberstein,363 U.S. 278, 285 (1960). Petitioners have introduced no evidence as to why Daugherty arranged for Service to pay for the merchandise other than their general characterization of him as "a very gracious individual." Further, as we shall discuss, petitioner caused General to issue credits to cover the cost of much, if not all, of the merchandise in question. Although petitioner received some merchandise for which General credits were not issued to Service, the record will not support a finding that petitioner received any of the merchandise as gifts. Petitioners make several other technical arguments. First, they point to respondent's determination that petitioners received gross income of $22,072.57 and $10,248.83, respectively, in 1972 and 1973 and emphasize the further statement *109 in the notice that: "This income was realized from the credits issued to offset personal purchases made by you and paid for by General Tire Service, Inc., of Dallas, Texas." The notice then identifies the credits by numbers, dates, and amounts. Petitioners argue that the issuance of the credits by General would not constitute income to petitioners, who are cash basis taxpayers, and, further, that there is no evidence as to when the credits were paid. Petitioners' argument requires an analysis of the details of the embezzlement scheme worked out by petitioner and Daugherty. As stated in our findings, petitioners purchased merchandise from various stores and charged it to Daugherty or to Service. Daugherty then caused Service to pay for the merchandise and petitioner caused General to issue credit memoranda to Service to cover its cost. Even if petitioners are correct in their argument, as it implies, that petitioners realized income when they received the merchandise rather than when General reimbursed Service for it, our conclusion that petitioner has not proved respondent's determination erroneous would be the same. [2] It is true that, of the several hundred stipulated invoices, *110 a few (approximately 25, totaling $6,291.31) are dated in late 1971. But the record also shows that arrangements were made to have some of the merchandise shipped to petitioners at their home in Ohio. They have not shown that the merchandise bought on these 1971 invoices was not shipped to them and that it was received prior to the first day of 1972. They have not, therefore, established that its value did not constitute 1972 income. Furthermore, if treating petitioners as having realized income on receipt of the merchandise, rather than on issuance of the credits, would affect the correctness of respondent's determination of the amount of taxable income during the years in question, then the burden is on petitioners to introduce evidence in support of their contention. This they have not done. *111 Petitioners also contend that respondent has made "a judicial admission that the purchases of the gifts constituted a debtorcreditor relationship between Service and the Petitioner." The contention is based on the following passage in respondent's trial memorandum: Respondent contends that the use of General Tire's credits to discharge the debt incurred by petitioners' purchases without the knowledge or consent of General Tire constituted an embezzlement from which the petitioners derived realizable economic value. Petitioner appears to contend that he had no income if he was obligated to pay for the merchandise. Respondent's contention, however, is consistent with his theory that petitioner realized income when the credits were issued. That the illegal taking created a debt does not mean that petitioners did not realize income from the embezzlements. In Commissioner v. Wilcox,327 U.S. 404, 408 (1946), the Court pointed out that in every case in which an employee embezzles funds from his employer, he is "at all times under an unqualified duty and obligation to repay the money to his employer" and concluded, for that reason, that an embezzler did not realize *112 taxable income from his wrongful taking. Subsequently the Court in Rutkin v. United States,supra, held that an extortioner is taxable on his ill-gotten gains. In James v. United States,supra, the Supreme Court expressly overruled the Wilcox opinion, pointing out (at 216) that "[t]he victim of an extortion, like the victim of an embezzlement, has a right to restitution" and that the term "gross income" is not to be circumscribed by attenuated subtleties. The Court stated (at 219): When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." * * * Thus, it matters not whether petitioner realized income from the receipt of the merchandise for which he was obligated to repay Service or whether he realized *113 income by causing General to issue the credits to Service thereby becoming obligated to repay General. In either case, there was no consensual recognition of an obligation to repay either Service or General. Petitioner next argues that the record does not show if or when General paid the credits he caused to be issued to Service and "the mere issuance of a credit from General to Service would not constitute taxable income to petitioner." This argument, of course, overlooks the fact that petitioners, not respondent, have the burden of proof in the instant case. And if petitioners realized income when they received the merchandise, the argument is beside the point. Petitioners' next argument is that the Court erred in permitting Thomas F. Douglas (Douglas) to testify as a witness because, in May 1979, petitioners served an interrogatory asking for the name and address of each witness that was to testify. On June 29, 1979, respondent answered the interrogatory but did not list Douglas. Douglas was General's auditor who investigated and identified the embezzlement transactions here in issue. We do not interpret Rule 71, however, to require a party to furnish a list of witnesses *114 (except as reflected in Rule 71(d) on experts' reports). Cf. Wirtz v. Continental Finance & Loan Co. of West End,326 F.2d 561, 564 (5th Cir. 1964); Fidelis Fisheries v. Thorden,12 F.R.D. 179, 180 (S.D.N.Y. 1952).Petitioner admits that in trial memoranda filed April 20, 1981, and March 1, 1982, respondent listed Douglas as a witness and summarized his expected testimony. Those memoranda complied with the suggestion in Wirtz v. Continental Finance & Loan Co. of West End,supra at 564, that information on witness lists in appropriate cases may properly be requested in conferences immediately prior to trial rather than in interrogatories served at the discovery stage. [3] Petitioner was not prejudiced by allowing Douglas to testify. Petitioners also argue that the merchandise that they received has *115 been incorrectly valued by respondent. Respondent's valuation is indirectly based on the retail value of the items received. [4] Petitioners maintain, however, that much of the merchandise that they received was not to their taste or was not needed by them and, consequently, that the value of the merchandise to them was only 30 percent of its retail value. We find the argument unconvincing and the evidence on which it is based incredible. Petitioners cite Turner v. Commissioner,T.C. Memo. 1954-38, for the proposition that the income from their embezzlement scheme should not be determined by the retail value of the merchandise they received, but that case is *116 clearly distinguishable from the present one. Turner concerned the amount of income realized by the taxpayer as a result of winning two steamship tickets to Buenos Aires in a radio contest. The tickets were not transferable, and the cruise had to be taken within one year at a date to be approved by the steamship company. With these restrictions in mind, the Court found that the income realized by the taxpayer was less than the tickets' retail price. In the present case, however, there were no comparable restrictions on the use of the property obtained by petitioners, and we think it has not been shown that the merchandise's retail price was not its fair market value. [5]
Finally, citing Carson v. United States,560 F.2d 693 (5th Cir. 1977), petitioners argue that respondent's determination that petitioners realized income from embezzlement was arbitrary, and that, as a result, the burden of proof has shifted to respondent. We do not agree with petitioners. We recognize that in Carson the court sustained an assessment of a wagering excise tax for but one period in controversy and *117 overturned an assessment for 1970-1971 because nothing linked the taxpayer to any gambling business during that period. The court explained its reasoning as follows (at 698): We work no change in the burden or order of proof in wagering excise tax cases. We simply recognize that, at the close of all the evidence, if the record contains no item of proof tending to show that the taxpayer was engaged in wagering activity during the period assessed, the Commissioner's determination cannot prevail. The record before us contains no such predicate. It anything, the evidence below tended to suggest that taxpayer began large scale gambling operations only in the fall of 1971. * * * Totally without factual foundation, the 1970-71 assessment cannot rest on the presumption of correctness. [6] * * * *118 The present trial record amply demonstrates that petitioner was engaged in embezzlements in 1972 and 1973. The record includes the testimony of Service's bookkeeper describing how she received invoices from Dallas department and other stores bearing directions to ship merchandise to petitioners in Ohio (and other invoices identified by Daugherty as covering goods purchased by or for petitioners), how she maintained at her supervisor's direction a journal type of worksheet on such items, and how she was directed to, and did, make bookkeeping entries of fictitious transactions needed to offset the payments of these invoices with credits from General. A General auditor testified that in 1973 he undertook an audit of Service's books at the request of General's Retail Sales Department and that he concluded that Service's books reflected large payments to local department stores for items not related to Service's business. As we have pointed out, petitioner has stipulated that he received the merchandise described in sixteen separate invoices from Dallas department stores, which were charged to Daugherty, and he admitted on cross-examination that he received other merchandise and really *119 had "no idea" as to its amount. In fact, one of his main arguments, as noted above, is that the retail price of the merchandise he received exceeded its value to him. Clearly, the evidence of record is sufficient to meet the Carson standard set forth above. [7]
*120 As to the additions to tax, section 6653(a) provides for the imposition of an addition to tax if "any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations." The record clearly establishes that petitioners intentionally failed to report the income from their embezzlement scheme in their tax returns for 1972 and 1973. They have not shown that they did not intentionally disregard the law in doing so. Accordingly, we sustain respondent's imposition of additions to tax for those years. To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. All "Rules" references are to the Rules of Practice and Procedure of this Court unless otherwise noted.↩
2. The argument is that petitioners are cash basis taxpayers and all items constituting gross income are to be included in the taxable year in which they were actually or constructively received. Sec. 1.446-1(c)(1)(i), Income Tax Regs. If petitioner actually received some of the merchandise in 1971 rather than 1972, the correct analysis may be that he realized income when he received that merchandise in 1971 and that he realized income also when General paid for it with credits to Service in 1972 but became entitled to an offsetting deduction in 1972 in the amount of such payments. Cf. Fox v. Commissioner,61 T.C. 704, 710↩ (1974). Petitioner's failure of proof, pointed out in the text, however, precludes this treatment.
3. Petitioners objected on grounds of hearsay to the admission of Douglas' worksheet. Without expressing any view as to the merits of petitioners' arguments, we have based no findings on that report. But see Rule 1006, Federal Rules of Evidence; cf. United States v. Smyth,556 F.2d 1179↩ (5th Cir. 1977).
4. As noted above, the income determined by respondent to have been realized by petitioners through their embezzlement scheme was computed as the sum of the credits issued from General to Service. This computation is consistent with respondent's primary theory that the issuance of the credits gave rise to the income. Because the credits were issued to offset the debits recorded for the merchandise purchased, however, the total amount of the credits also approximates the merchandise's retail price.↩
5. Sec. 1.61-2(d)(1), Income Tax Regs.↩
6. Other cases involving illegal income and reaching a similar conclusion include Llorente v. Commissioner,649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part and remanding 74 T.C. 260 (1980); Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Gerardo v. Commissioner,552 F.2d 549, 553-554↩ (3d Cir. 1977), affg. in part and revg. in part and remanding a Memorandum Opinion of this Court.
7. As noted in footnote 3, supra, no findings of fact have been based on the Douglas audit report because of petitioners' hearsay objection. We note, however, that hearsay evidence may be considered in deciding whether the Commissioner's determination is arbitrary and capricious. Avery v. Commissioner,574 F.2d 467, 468 (9th Cir. 1978), affg. a Memorandum Opinion of this Court. Petitioners objected to the admissibility of paragraphs 12, 13, and 14 of the stipulation on the ground that they describe a compromie within the meaning of Rule 408, Federal Rules of Evidence. The paragraphs are as follows: 12. In October, 1974, Mr. Brunskill made an offer of settlement to General in the amount of $36,581.29 to release him from civil liability by General. General accepted such offer. 13. On March 1, 1975, Mr. Brunskill made a payment to General in the amount of $24,318.55. The just-stated amount represented the payment by Mr. Brunskill to General of withdrawn pension plan benefits with General in the amount of $9,029.02 and withdrawn profit sharing plan benefits in the amount of $13,883.24. 14. On March 1, 1975, Mr. Brunskill executed a promissory note to General in the amount of $14,000.00. Payments of principal on that note in 1975 were made in the total amount of $1,406.29. Attached hereto as Joint Exhibits 30-AD and 31-AE are true and correct copies of the promissory note and the payment schedule, respectively. Petitioners reserve the right to object to the admissibility of the facts stated in paragraphs 12, 13, and 14 on grounds other than a lack of foundation. Without passing on the merits of petitioners' objections, we have based no findings of fact on those paragraphs.↩