# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1772

———————

United States of America,

        Appellee,

v.

John Palma,

        Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Nebraska.
\*
\*
\*

———————

Submitted: November 17, 2006
Filed: January 18, 2007

———————

Before BYE, BOWMAN, and GRUENDER, Circuit Judges.

———————

BYE, Circuit Judge.

A jury convicted John Palma of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, two counts of social security fraud in violation of 42 U.S.C. § 408(a)(4), and two counts of making a false statement to the United States in violation of 18 U.S.C. § 1001(a)(2). Palma appeals contending the prosecutor made an improper statement during closing argument which invoked the jurors' status as taxpayers. Although we agree the comments were improper, we conclude the error was harmless and therefore affirm the judgment of conviction.

# I

This case arises from an anonymous tip the Social Security Administration (SSA) received indicating a woman named Deborah Holbrook was working under the name of her daughter, Stacy Corbett, at the Second Base Bar in Omaha, Nebraska. The Second Base is owned and operated by John Palma. Holbrook was working under Corbett's name so she could continue receiving social security disability benefits. A special agent from the Office of the Inspector General for the SSA initiated an investigation which revealed not only was the tip accurate, but John Palma himself was working at the bar while receiving social security disability benefits.

The case proceeded to trial. The government presented a strong case. In a search of Palma's home, the government found checks made out to both Stacy Corbett and Deborah Holbrook, showing Palma was aware the mother was not the daughter and suggesting he was complicit in Holbrook's fraud against the SSA. Holbrook also testified Palma knew both her and her daughter, Stacy, because Stacy played darts in a league at the bar. Stacy's testimony indicated she herself had never worked at the bar.

The government called several witnesses to prove Palma was working at the bar, including the lessor of the bar property, the operator of a beauty shop located in the same building, three former bartenders, a beer distributor, a Frito Lay salesman, a route driver for AmeriPride, and an administrator for the Nebraska Liquor Control Commission. All testified to their personal knowledge of the work Palma performed at the bar, such as opening the bar and closing the till on a daily basis, cleaning the facility, scrubbing the floor with a mop, hiring and training bar employees, clearing off tables, bartending, serving drinks, paying the rent and utilities, solving the building's maintenance problems (such as the boiler and garbage pickup), moving beer from the basement of the building to the bar, accepting beer deliveries, ordering potato chips, ordering bathroom products from AmeriPride, and designating himself as the

"corporate manager" for purposes of the liquor license for the bar. In short, the evidence showed Palma participated in virtually every aspect of the bar's business at one time or another.

The government also presented evidence regarding Palma's disability interview and application process to show Palma understood what amount of work would constitute substantial gainful activity. Palma represented that "due to [his] disability . . . he, in fact, hasn't done any activities for the [bar] since the onset [of his medical disability]" and answered "no" to the question "[a]re you working now."

At the end of the prosecutor's closing argument, he said:

But the evidence has shown, ladies and gentlemen, that this defendant abused – abused the system. He took advantage of it. He lied to it and he got money from you and you and you and you and these folks back here that he did not disclose.

Failure to disclose about work. That's what this case is about. He was working and he didn't tell the Social Security Administration. He defrauded the Social Security Administration not once but twice. Once through Debbie Holbrook – helping out Debbie Holbrook and then himself for his own benefit.

There's no doubt here, ladies and gentleman, failure to disclose his work. There's no doubt and I ask you to return the only verdict that this – this evidence supports and that is guilty as to each crime. Thank you.

Palma's attorney immediately requested a side bar and moved for a mistrial, arguing:

[B]ecause counsel for the government inappropriately pointed to each one of the jurors and said that the defendant, Mr. Palma, actually took money out of their

pockets. That is improper, it is – well, it's improper, it is improper argument, and it should not have been said, and I think the case law shows that it is reversible error. . . . He specifically pointed to them and said, He took money out of your pocket.

The district court noted the motion for a mistrial but denied it, stating:

If either attorney wants a brief break after closing argument to refer me to case law so that I can give a curative instruction, if you think that that's necessary or if that's requested, I'll be happy to entertain a request for a break and a request for a curative instruction.

After Palma's attorney gave his closing argument, the district court summoned both attorneys back to the bench and made these comments regarding the motion for a mistrial:

I pulled up the most recent case from the Eighth Circuit that came down earlier this month that addresses this issue [United States v. Levering, 431 F.3d 289, 293 (8th Cir. 2005)], and it's clear that – first of all, that I've got a lot of discretion in the area and also that the government's closing argument is viewed in its entire context, not just one statement that may have been made. So I'm going to give you both a copy of that. You can have it. I don't think that a curative instruction is needed on that topic.

The jury returned a verdict finding Palma guilty on all five counts. Palma's attorney brought a post-trial motion for a new trial based on the prosecutor's closing argument. The district court denied the motion without comment. The district court subsequently sentenced Palma to twelve months and one day in jail. Palma filed a timely appeal contending the district court abused its discretion in denying the motion for a new trial.

-4-

## II

When a defendant alleges prosecutorial misconduct as the grounds for a new trial, we "review the facts of each case in order to determine if the prosecutor's remarks unduly prejudiced the defendant's opportunity for a fair trial [and] will reverse the conviction if we conclude the jury's verdict could reasonably have been affected by the prosecutor's improper comments." United States v. Conrad, 320 F.3d 851, 855 (8th Cir. 2003).

Palma argues the prosecutor's comments were improper because they invoked the individual pecuniary interests of the jurors as taxpayers. We agree. A so-called "golden rule" argument which asks the jurors to place themselves in the position of a party "is universally condemned because it encourages the jury to 'depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1083 (8th Cir. 2000) (quoting Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir. 1982)). The prosecutor's comments in this case were akin to a golden rule violation because they suggested the jurors were themselves direct victims of Palma's crimes.

Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper. See United States v. Schimmel, 943 F.2d 802, 806 (7th Cir. 1991) ("[A]n appeal to the pecuniary interests of the jurors is unquestionably an unacceptable predicate for argument in a criminal trial: 'Since pecuniary interests would necessarily disqualify a prospective juror from service, it is patently improper to make an appeal to that interest in closing argument.'" (quoting United States v. Scott, 660 F.2d 1145, 1170 (7th Cir. 1981))); United States v. Blecker, 657 F.2d 629, 636 (4th Cir. 1981) ("We recognize that appeals to the pecuniary interests of jurors [as taxpayers] are patently improper."); United States v. Lotsch, 102 F.2d 35, 37 (2d Cir.

1939) (indicating prosecutor's comment in a bank fraud case that "money lent to these borrowers came out of the jurors' pockets [was] plainly an improper remark").

In United States v. Smyth, 556 F.2d 1179 (5th Cir. 1977), which like this case involved a charge of conspiring to defraud the United States, the prosecutor's closing arguments included this comment: "You want to say we approve of this type of conduct in dealing with the Government? Let Uncle Sam take the ride, but when you think about that, think of that, *that's your tax money, that's your tax money being kicked in here.*" Id. at 1185 (emphasis added). The Fifth Circuit concluded the argument was an improper, personal appeal to the jurors as taxpayers: "We view the prosecutor's pitch as an unprofessional and highly improper appeal to the passion and prejudices of the juror[s]." Id.

In Buttermore v. United States, 180 F.2d 853 (6th Cir. 1950), a criminal tax evasion case, a prosecutor made several statements implying that certain assets traceable to the defendant were actually paid for by the jurors as taxpayers due to the defendant's failure to pay taxes: "Little Creek paid part of it,- you and I paid the balance . . .. You and I are paying the [defendant's life insurance] premium . . .. Each one of us helped pay for that piece of property." Id. at 856. On appeal, the defendant argued the trial court erred in overruling his objection to the arguments. Id. The Sixth Circuit agreed: "We do not commend this character of argument. It was improper and the court not only should have reproved counsel but should have instructed the jury to disregard it." Id. Here, likewise, the prosecutor's comments were improper and the jury should have been instructed to disregard them.

Given the strength of the government's case, however, we cannot conclude the district court abused its discretion by declining to grant a mistrial or give Palma a new trial. See id. ("The court certainly did not abuse judicial discretion by declining to declare a mistrial and discharge the jury, or by overruling appellant's motion for a new trial. *If the case against appellant had been a weak one another course might have*

-6-

*been justified*.") (emphasis added); <u>see also</u> <u>United States v. Davis</u>, 557 F.2d 1239, 1245 (8th Cir. 1977) ("Any error raised concerning closing arguments would be harmless in light of the strong evidence of defendant's guilt.").

## III

We agree with Palma's contention the prosecutor improperly appealed to the jurors as taxpayers in his closing argument, but conclude the error was harmless given the strength of the government's case, and therefore affirm the judgment of conviction.

_____