[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12238
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20707-RSR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIE JEAN BAPTISTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 16, 2015)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant Marie Jean Baptiste appeals her conviction for three counts of theft of United States property, in violation of 18 U.S.C. § 641.  On appeal, Defendant raises three arguments.  First, she contends that the district court erred by admitting evidence of her prior act of credit card fraud.  Second, she argues that the district court erred in denying her motion for a mistrial, based on the prosecutor's improper statement during his rebuttal closing argument.  She further argues that the cumulative effect of these errors warrants a new trial.  After careful review, we affirm.

## I.  Background

In September 2012, refunds from three fraudulently-filed federal income tax returns (totaling $3,280) were deposited into Defendant's Higher One student bank account.  That same day, Defendant walked into a Chase Bank branch and used her Higher One debit card and driver's license to withdraw $2,400 from that account.  Through subsequent ATM withdrawals and debit card purchases, all of the fraudulent tax proceeds were withdrawn from Defendant's Higher One account.  Defendant was indicted for three counts of theft of money or property of the United States.  She pled not guilty, was tried by a jury trial, and found guilty.

Prior to trial, the Government filed a notice pursuant to Federal Rule of Evidence 404(b), indicating that it intended to introduce evidence at trial of Defendant's prior act of credit card fraud arising from her possession and use of

2

another individual's credit card without authority or permission. The Government argued that this evidence was relevant in establishing Defendant's knowledge, intent, and her lack of mistake or accident in committing the charged crime. Defendant moved *in limine* to exclude the admission of this evidence, arguing that such evidence was inadmissible pursuant to Rule 404(b) because it was not "sufficiently similar" to the charged conduct and, therefore, it improperly impugned her character. Defendant also argued that the probative value of the evidence was substantially outweighed by its unfair prejudice.

After a pretrial evidentiary hearing, the district court overruled Defendant's motion *in limine*, concluding that the evidence of Defendant's prior credit card fraud was relevant to demonstrating intent, knowledge, absence of mistake, and lack of accident, and that the probative value was not substantially outweighed by the danger of unfair prejudice.

At trial, the Government presented numerous witnesses, including Defendant's ex-boyfriend Hans Velo Germain, who testified that his friend, John Wilson, had been involved in the filing of fraudulent tax returns during the time period set out in the indictment. Germain provided Wilson with his Higher One bank account information, and Wilson had tax refunds deposited in Germain's account. Once the refunds were deposited, Wilson used Germain's debit card to

3

withdraw the majority of the funds, but left the remainder in the account for Germain.

Germain further testified, over Defendant's objection, that he recruited Defendant to join the scheme because he knew that she was not working and had bills to pay, including $50 per month in restitution because she was on probation for a prior credit card fraud offense. In recruiting Defendant, Germain told her that Wilson was "doing tax fraud," and Germain introduced Defendant to Wilson, who also told her that the money was coming from tax fraud. Defendant then gave her Higher One account information and debit card to Germain, who in turn provided it to Wilson. Two or three weeks later, the three tax refunds identified in the indictment were deposited into Defendant's account, and Defendant and Germain went to the bank and withdrew $2,400. Defendant kept $1,500 and gave the rest to Wilson.

As to the Rule 404(b) evidence at issue on appeal, the Government presented evidence of Defendant's prior act of credit card fraud through the testimony of the victim of that incident, Gloria Peterson, and Detective Robert Young, who had investigated it. Their testimony revealed that, in 2010, Defendant had pled no contest in a Florida state court to credit card fraud stemming from her repeated, unauthorized use of Peterson's credit card, which Defendant had found on the floor of the Macy's store where she worked. When interviewed by Detective Young,

4

Defendant told him that her boyfriend had insisted that she use the card and that she had also given the card to other people to use. During this interview, Detective Young also explained the concepts of theft and fraud to Defendant.

In the present case, Defendant testified in her own defense. She denied that she knew that the money deposited into her bank account had come from fraudulently-filed tax returns. She asserted that she provided Germain with her bank account information because he had asked to use her account to deposit money that he earned from his job at Macy's. She denied that Germain had a conversation with her about fraudulent tax returns or that she had met Wilson. After she and Germain had a fight, she withdrew the money because Germain told her that he wanted all of the money back from her account. She did not keep any of the money, but gave it all to Germain.

During the Government's rebuttal closing argument, Defendant moved for a mistrial after the Government referred to taxpayers' money as "your money." The district court denied the motion, but did provide a curative instruction. The jury found Defendant guilty on all three counts.

## II. Discussion

### A.  Rule 404(b) Evidence

Defendant argues on appeal that the district court erroneously admitted evidence concerning her prior act of credit card fraud. This evidence included the

5

testimony of the victim and the investigating detective, as well as Germain's

testimony that he had asked Defendant to help him in the tax refund fraud at issue

here because he knew that Defendant was unemployed, that she was required to

pay $50-per-month in restitution for the use of Peterson's credit card, and that she

therefore needed money. Defendant challenges the admission of the above

evidence, arguing that the credit card fraud was not sufficiently similar to the

instant offense to be probative. Defendant further complains that, by portraying

Defendant as a liar and a thief, the evidence constituted an improper attack on her

character.

We review the district court's admission of evidence under Rule 404(b) for a

clear abuse of discretion.[1]  *United States v. Sterling*, 738 F.3d 228, 234 (11th Cir.

2013), *cert. denied*, 134 S. Ct. 2682 (2014). Under this standard, we affirm so long

as the district court's decision was not based on a clear error of judgment or an

application of the wrong legal standard. *See United States v. Matthews*, 431 F.3d

1296, 1312 (11th Cir. 2005).

Rule 404(b) of the Federal Rules of Evidence provides that evidence of a

crime, wrong, or other act is not admissible to prove a person's character in order

---

[1]  We disagree with the Government's assertion that this issue should be reviewed for
plain error because Defendant did not renew her objection to the evidence at the time it was
admitted. Pursuant to Federal Rule of Evidence 103(b), a "definitive" pre-trial evidentiary ruling
need not be renewed at trial to preserve the issue for appeal. The record in this case reflects that
the district court made a definitive pre-trial ruling on the admissibility of the testimonial
evidence about Defendant's prior act of credit card fraud. Accordingly, this issue is preserved,
and we review using an abuse of discretion standard.

to show that, on a particular occasion, the person acted in accordance with her character. Fed.R.Evid. 404(b)(1). Such evidence, however, may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed.R.Evid. 404(b)(2). We have held that evidence of a defendant's other crimes or acts is admissible under Rule 404(b) when: (1) it is relevant to an issue other than the defendant's character; (2) sufficient proof exists for a jury to find by a preponderance of the evidence that the defendant committed the acts in question; and (3) the probative value of the evidence is not substantially outweighed by undue prejudice under Federal Rule of Evidence 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Further, evidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is necessary to complete the story of the crime or is inextricably intertwined with the evidence regarding the charged offense. *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford,* 764 F.2d 1493, 1499 (11th Cir. 1985).

7

Whether offered under Rule 404(b) or as intrinsic evidence, the district court must find that the probative value of the proffered evidence is not substantially outweighed by unfair prejudice and that it meets the other requirements of Rule 403. *See United States v. Baker*, 432 F.3d 1189, 1205 & n.9 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006).

When determining the probative value of extrinsic act evidence, we consider: (1) the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt; (2) the similarity of the extrinsic act and the charged offense; and (3) the closeness or remoteness in time between the extrinsic act and the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1268 (11th Cir. 2008). If extrinsic act evidence is essential to obtaining a conviction, it is more probative, and thus, more likely to be admissible. *Sterling*, 738 F.3d at 238.

Rule 403 permits the district court to exclude relevant evidence when its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. The risk of prejudice from extrinsic act evidence may be reduced by an appropriate limiting instruction. *Ellisor*, 522 F.3d at 1268. Exclusion of relevant evidence is an extraordinary remedy, though, and it should be used sparingly. *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006). In conducting the Rule 403 analysis, we view any

8

relevant evidence in the light most favorable to its admission, maximizing its probative value and minimizing any undue prejudicial impact. *Id.*

Applying the above standards, we find no abuse of discretion by the district court in admitting the above evidence. Focusing first on the testimony concerning Defendant's prior credit card fraud, this testimony established[2] that Defendant had repeatedly, and without authorization, used the credit card of victim Peterson, after having found that card on the floor of the Macy's store in which she worked. Contrary to Defendant's argument, this evidence was highly relevant for purposes expressly authorized by Rule 404(b): that is, to show intent, knowledge, absence of mistake, and lack of accident as to the charged offense.

To prove Defendant's guilt, it was not enough for the Government to prove merely that the tax refund checks, fraudulently obtained and made payable to other individuals, had been deposited to Defendant's account. The Government also had to prove that Defendant had knowledge that these refund checks had been stolen or fraudulently obtained and that she intended to convert these funds to her own use. *See* 18 U.S.C. § 641; *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (*en banc*) (stating that to support a § 641 conviction, the Government must establish that the defendant fraudulently appropriated or converted government money or

---

[2] The second prong of the Rule 404(b) admissibility test requires proof, by a preponderance of the evidence, that the defendant actually committed the prior act in question. Defendant makes no argument on appeal that the Government did not sufficiently prove that she had previously engaged in credit card fraud.

property for her own use or use of others, "and that the defendant did so knowingly and willfully with the intent to either temporarily or permanently to deprive the owner of the use of the money or property.").

By pleading not guilty, Defendant put the Government to its burden on all elements. *See Edouard*, 485 F.3d at 1345 (a defendant who pleads not guilty makes intent a material issue). More than that, she had specifically denied in her interview with investigators, as well as in her testimony at trial, that she knew the true source of these checks. Instead, it was her position that she had allowed her boyfriend, Hans Germain, to deposit these checks into her account, believing that these checks represented legitimate checks possessed by Germain, not tax refund checks issued to other people. Similarly, Defendant denied ever receiving any part of the proceeds of these checks. Defendant's denial that she knew the nature of these deposited checks or that she pocketed any part of the proceeds—both assertions that were in direct contradiction of Germain's testimony—directly put at issue the question of her intent and her knowledge, as well as the question whether the ultimate cashing of these checks that did not belong to her was the result of an accident or mistake on her part.

For this reason, evidence of prior acts in which the Defendant had also, without permission, used a credit card that was not hers, for the purpose of her own financial gain, revealed an intent and knowledge similar to those same mental

states at issue in the present case.[3] That the prior offense and present offense may not have contained precisely the same elements does not defeat the probative value of the evidence. *See United States v. Dothard*, 666 F.2d 498, 502 (11th Cir. 1982) (holding that the relevancy of other act evidence derives from the defendant having possessed the same state of mind in the commission of both the extrinsic act and the charged offense). Both the prior and present offense involve the intent to steal for personal gain. We therefore conclude that the evidence concerning Defendant's credit card fraud was quite probative.

Defendant has also not shown that the probative value of the evidence concerning her prior act of credit card fraud was substantially outweighed by the danger of unfair prejudice. Given the diametrically-opposed testimony of Germain and Defendant concerning her knowledge and intent, the prior offense provided a valuable insight into Defendant's likely mental state and made less believable her protestation that she had no inkling that these checks were not Germain's. This evidence was therefore important to the Government's case. *See Sterling*, 738 F.3d at 238.

Defendant also objected to admission of Germain's testimony that he approached Defendant to help him convert these tax refund checks because he

---

[3] Likewise, as to both the prior fraud and the present charge, Defendant blamed a boyfriend for the wrongdoing.

knew that she was required to pay $50 per month restitution arising out of the earlier credit card theft, that she was unemployed, and that she therefore could use the money. The district court admitted this evidence as being inextricably intertwined with the charged offense.

The evidence was intertwined. *See Williford*, 764 F.2d at 1499. It also tended to prove motive by the Defendant, which is a permissible object of proof under Rule 404(b). Yet, had the underlying prior conviction giving rise to the obligation to pay restitution not been based on a mental state that was similar to the mental state required for the charged offense, it would be a closer call whether the probative value of this "motive" evidence outweighed its undue prejudice. If, for example, a defendant were paying monthly restitution based on a conviction for assault, the fact of this prior assault would not typically provide any relevant information about the defendant's knowledge or intent to convert stolen property or engage in fraudulent activity. In that case, while evidence showing the need to engage in remunerative activities in order to provide money for restitution obligations arising from the assault conviction might be probative evidence on the question of motive, the balancing of prejudice against probative value would be a closer question. Here, however, Defendant's restitution obligations arose from the same offense that the district court and we have determined to be appropriate Rule 404(b) evidence. Accordingly, allowing Germain to reference the need to pay

12

restitution as a motive for Defendant's participation in the present offense provided no additional information to the jury of prior wrongdoing of the Defendant. Thus, its probative value was clearly not outweighed by any undue prejudicial effect.

Additionally, when the district court admitted Germain's testimony about Defendant's restitution obligation stemming from her prior incident involving credit card fraud, the court gave an appropriate limiting instruction. Specifically, the court instructed the jury that it was not to consider Defendant's prior act as evidence for the instant charges, but it could consider the prior act only as evidence of her state of mind, intent, planning, or lack of accident or mistake. The court gave this instruction to the jury a second time prior to the testimony of the victim of the credit card fraud and the detective who investigated that offense. This instruction was given a third time at the close of the case. This instruction minimized any unfair prejudice that might have resulted from the admission of the evidence regarding Defendant's prior credit card fraud. *See Ellisor*, 522 F.3d at 1268.

In summary, we conclude that the district court did not clearly err, or err at all, in admitting Germain's testimony concerning motive, as well as the other-referenced testimony establishing Defendant's earlier wrongful use of another's credit card.

## B.      Motion for Mistrial

At trial, Defendant moved for a mistrial after the Government stated, in its

rebuttal argument, that:

> In opening, I stated that this is not the largest case, but you did learn
> during the course of this trial that . . . the defendant's conduct . . . is
> part of a larger scheme . . . .   And you also learned how serious this
> case is, how it is a serious federal offense to steal government money.
> And the government, this is your money, the taxpayers.

The district court sustained Defendant's objection to this statement, but denied

Defendant's mistrial motion and instead gave a curative instruction.

On appeal, Defendant argues that the Government's "your money" comment

was improper, the district court's curative instruction did not undo the harm, and

the court erred in denying Defendant's motion for a mistrial.  We review the denial

of a motion for a mistrial for an abuse of discretion.  *United States v. Ettinger*, 344

F.3d 1149, 1161 (11th Cir. 2003).  A defendant is entitled to a grant of a mistrial

only upon a showing of substantial prejudice.  *Id.*  If the district court gives a

curative instruction, reversal is appropriate only if the evidence "is so highly

prejudicial as to be incurable" by the district court's instruction.  *United States v.*

*Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005).

During closing arguments, a prosecutor is "forbidden to make improper

suggestions, insinuations and assertions calculated to mislead the jury and may not

appeal to the jury's passion or prejudice."  *United States v. Rodriguez*, 765 F.2d

14

1546, 1560 (11th Cir. 1985) (quotation marks omitted).  Specifically, the prosecutor may not invoke the individual pecuniary interests of the jury as taxpayers.  *United States v. Smyth*, 556 F.2d 1179, 1185 (5th Cir. 1977).

Given the above case authority, the prosecutor should not have made a comment that appealed to the jurors' pecuniary interests as taxpayers.  *See id.* Nevertheless, Defendant has not shown that the result of her trial would have been different, had the comment not been made.  The district court promptly sustained Defendant's objection and instructed the jury to disregard the Government's comment.  After denying Defendant's motion for a mistrial, the court subsequently gave a curative instruction[4] modeled on the instruction given by the district court in *Smyth*,[5] and it then confirmed with the jurors that they understood and would be

---

[4]  The curative instruction in this case instructed the jury as followed:

> You are not to consider the statement that was made immediately before the objection that happened right before our break for the reason that that was a personal appeal to you.  And while it is all right for the government to argue that tax money is involved here, it is not all right for the Government to argue that this directly hurts you.  It must not be considered by any member of the jury because you are not permitted to— let me put it this way, because you must view the matter impartially without any personal interest in the case.

[5]  The district court in *Smyth* provided the following curative instruction:

> Members of the jury, you are not to consider that statement for the reason that it's a personal appeal to you.  It's alright for him to argue that tax money is paying for it but (not) the portion about your tax money hurting you.  It will not be considered by you because . . . you're supposed to view the matter impartially.

*Smyth*, 556 F.2d at 1185 n.13.

15

able to follow the instruction.[6]  After the jury returned its verdict (and Defendant renewed her motion for a mistrial), the court found, based in part on its observations of the jurors' reactions to the curative instruction, that a reasonable probability did not exist that the Government's improper comment affected the outcome of the trial.

Moreover, the Government introduced significant evidence of Defendant's guilt, including Germain's testimony regarding her willing participation in the tax fraud; evidence showing that Defendant checked her bank account around the time the fraudulent deposits were made; and Defendant's testimony explaining how the checks came to be deposited in her account, which explanation the jury obviously did not believe.  *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (holding that "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt") (emphasis in original).

---

[6]  Specifically, the district court engaged in the following exchange with the jury:

> Let me ask, does everybody understand the instruction that I have given? And I don't want you to be shy about this.  If you don't understand or you have a question, these things are kind of tricky sometimes.  Don't be shy, raise your hand, let me know, it's no problem.  This is one of those times when we are happy if you raise your hand if you need instruction.

> Okay.  I see no hands.  Is there anybody here who cannot follow that instruction?  If so, again, don't be shy, we need to [know] this.  Raise your hand for me now, please.  Again, I see no hands.  I thank you all for that.

Additionally, contrary to Defendant's argument, the improper comment was an isolated part of the prosecutor's closing argument, having been made only once by him.  Thus, in light of the curative instruction and substantial evidence of Defendant's guilt, we conclude that the improper comment was harmless and that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

## C.    <u>Cumulative Error</u>

Defendant's final argument is that the cumulative effect of the above errors warrants a new trial.  However, as discussed above, we have found only one misstep in this case—an isolated comment by the prosecutor—which inappropriate statement was cured by the Court's instruction and was, itself, harmless. Accordingly, there was no cumulative error in this case.  *See United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (holding that "[i]f there are no errors or a single error, there can be no cumulative error.").

## III.  Conclusion

For all of the above reasons, we affirm Defendant's conviction.

**AFFIRMED.**