**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Raleigh H. LAWHON, Defendant-**
**Appellant.**

**No. 73–3933.**

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 7, 1974.

Thomas D. Aitken, Tampa, Fla., Davisson F. Dunlap, Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Harrison T. Slaughter, Asst. U. S. Atty., Orlando, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, App. Sec., John P. Burke, John B. Owens, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.

DYER, Circuit Judge:

Lawhon seeks to upset his conviction for making and subscribing false income tax returns for the years 1963, 1964 and 1965, in violation of 26 U.S.C.A. § 7206(1), and for attempted tax evasion for the same years in violation of 26 U. S.C.A. § 7201. He makes three basic contentions: first, that venue was not proved; second, that the Government's theory of taxability was unsound; and third, that the Government failed prop-

erly to discharge its burden of proof. Finding no merit to these and other assignments of error, we affirm.

For many years Lawhon has owned and managed citrus groves in Florida. Since about 1940 he also managed orange groves which were owned by his four children. The produce of the children's groves was sold to various fruit marketers through contracts in the name of "R. H. Lawhon Associates" (Associates). The checks payable to Associates from fruit buyers sometimes went directly to the children, but often were sent to Lawhon. The Associates' proceeds received by Lawhon were commingled with Lawhon's other funds, but the appellant kept a journal at his home showing his computations of the proceeds from the fruit sales and the allocation to his children of expenses and profit. From time to time Lawhon would purchase certificates of deposit for his children, make deposits in their savings accounts, or write checks to cover their personal expenses. Only a fraction of these payments, however, were reported by the children on their respective income tax returns.

The proceeds of the Associates' fruit sales were usually deposited either in Lawhon's personal bank accounts or in the accounts of family corporations which he controlled. After subtracting certain "reductions" from Lawhon's income, such as amounts of fruit income

reported on the children's tax returns, the Government calculated that Lawhon was taxable on the proceeds from the sale of fruit in 1963 in the amount of $181,741.72; in 1964, $81,023.81; and in 1965, $20,106.45. In contrast to these alleged total receipts, Lawhon reported on his tax returns for those years $116,039.00 in 1963, $712.00 in 1964, and zero in 1965. The Government also asserted that Lawhon understated his income from interest in 1963 by $3,912.28; by $16,982.46 in 1964; and by $1,114.32 in 1965.[1]

Under a seven-count indictment returned in 1969, Lawhon was tried before a jury, was acquitted of making a false income tax return for 1962, but was convicted for attempted tax evasion for the three following years, as well as for making a false tax return in 1965. The jury, however, was unable to reach a decision on the charges that Lawhon had made a false tax return in either 1963 or 1964; consequently, the district court declared a mistrial on the last two charges. The court also granted a new trial on the four other counts of which he had been found guilty. The primary reason given by the district court for granting the retrial was the Government's faulty evidentiary presentation of a summary chart of income reductions.[2] In the first trial, the prosecution prepared a chart listing all amounts which the Government recognized as allowable reductions from Lawhon's fruit receipts.

1. Lawhon concedes that there was an understatement of interest income in 1964 and 1965 in the amounts asserted by the Government. He contends, however, that the understatement for 1963 was only $209. Even accepting Lawhon's calculations for 1963, we disagree that willfulness cannot be inferred, especially in view of our determination, *infra*, that the Government proved a three-year pattern of substantially understating farm income.

2. The pertinent part of the district court's order granting the new trial reads:

The issue, then, is whether the Government had the burden of proving reductions to gross income or whether its offer to make the reductions through [the original summary chart] without proof was suffi-

cient so that its rejection by defendant leaves the defense without a basis for complaint. This Court concludes that the Government had the burden of proving by competent evidence both the gross income *and* reductions so that the net income would be established by proof.

\*    \*    \*    \*    ` \*

The failure of the Government to offer evidence of the alleged gifts of certificates of deposits resulted in an incomplete picture. The evidence relative to certificate of deposit purchases should have been available to the jury; if they were not reductions as a matter of law, the question of whether they were gifts from defendant's income or distribution of his children's income should have been for the jury.

Defense counsel successfully objected to the introduction of the chart on the ground that it was not supported by evidence in the record. A revised chart was prepared by the Government which did contain the requisite evidentiary backing, but both the revised chart in the first trial and the chart employed in the second trial allowed Lawhon fewer reductions from income than the original summary.[3]

After a second jury trial before a different judge, Lawhon was found guilty of all six charges and was fined $9,000. This appeal followed.

■ The first assignment of error is that the prosecution failed to prove venue in the Middle District of Florida. Section 7206(1) of the Internal Revenue Code proscribes "mak[ing] and subscrib[ing]" a false income tax return, and Lawhon points out that the Government offered no proof that these acts were done in the Middle District of Florida. Although venue is proper in the district where the return was made and subscribed, United States v. Hagan, D.Md.1969, 306 F.Supp. 620, venue may also lie in the district in which the return was filed. United States v. Gilkey, E.D.Pa.1973, 362 F.Supp. 1069. The question, then, is whether the Government showed by a preponderance of the evidence that Lawhon's returns were filed in the district in which he was convicted. Cauley v. United States, 5 Cir. 1966, 355 F.2d 175, cert. denied, 384 U. S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548.

■ The district court found that the returns were filed in Jacksonville, thus establishing venue in the Middle District of Florida. The finding was based on evidence which showed that Lawhon was a resident of and had his principal place of business in Florida, that he was required to file his returns with the IRS District Director in Jacksonville,[4] and that the returns were subsequently produced from the files of the District Director in Jacksonville. We conclude that this evidence was sufficient to support the inference that the returns were filed in Jacksonville, United States v. Graves, 5 Cir. 1970, 428 F.2d 196, cert. denied, 400 U.S. 960, 91 S.Ct. 360, 27 L. Ed.2d 269, especially in view of the fact that Lawhon nowhere affirmatively suggests that venue should have been laid in any other district. Cf. Hill v. United States, 9 Cir. 1960, 284 F.2d 754, 755, cert. denied, 1961, 365 U.S. 873, 81 S.Ct. 908, 5 L.Ed.2d 862.

■ The next issue is whether the Government's theory of taxability was defective since Lawhon's children held title to the citrus groves and therefore owned the fruit marketed by the appellant. In support of the contention that his children, as the owners of the groves, were the ones liable for the income tax, Lawhon relies on a number of cases which have focused on ownership in determining tax liability, see, e. g., Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Camp Wolters Land Co. v. Commissioner, 5 Cir. 1947, 160 F.2d 84, and on cases in which a parent was held not taxable on income derived from the management and sale of property owned by his children, see, e. g., Alexander v. Commissioner, 5 Cir. 1951, 190 F.2d 753; Visintainer v. Commissioner, 10 Cir. 1951, 187 F.2d 519, cert. denied, 342 U.S. 858, 72 S.Ct. 85, 96 L.Ed. 646. The Government does not challenge the principles established by these decisions, but does dispute their

---

3. Because the transcript of the first trial is not in the record in this appeal, we do not know what objection, if any, defense counsel made to the introduction of the revised summary. The record of the second trial, however, indicates that while the defense was not satisfied with the summary chart which allowed a greater aggregate of reductions than the revised chart in the first trial—but still a lesser total amount than allowed on the original chart—the district court gave the defense an opportunity to examine the chart before admitting it into evidence. The record also shows that the defense had the opportunity, not fully exploited, to impeach the agent who prepared the chart with the inconsistency between the original and the later positions of the Government.

4. 26 U.S.C.A. § 6091.

applicability to the case now before us. The Government argues that the district court properly charged the jury that the question was whether Lawhon enjoyed "unfettered command" over the proceeds from the fruit sales. Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L. Ed. 916. We agree that the charge to the jury was correct.

The facts in the case *sub judice* are subject to conflicting interpretations. For example, the defense argues that the certificates of deposit purchased by Lawhon for his children were not gifts, but rather constituted an informal method of distributing the children's income. Weighing against this view is the Government's evidence that the children had not reported the receipts as income on their tax returns. While we do not suggest that a taxpayer can be held liable for failing to report another's income, that, of course, is not the Government's position in this case. Rather, the contention is that the evidence was sufficient to give rise to a jury question of whether, regardless of who owned the fruit, the income should be taxed to Lawhon since he had "such control over it that, as a practical matter, he derive[d] readily realizable economic value from it." Rutkin v. United States, 1952, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833.

Poonian v. United States, 9 Cir. 1961, 294 F.2d 74, gives no support to Lawhon's theory that ownership alone controls tax liability. In that case, a conviction for tax evasion was reversed because of a fatal variance between the indictment and the evidence adduced at the trial. Poonian was charged with failing to fully report *his* income, but the evidence failed to establish that the receipts from a farming operation were not his mother's, but his own. Although the court noted that Poonian was acquitted of other counts because his mother was found to be the owner of the income-producing property, nothing in the opinion suggests that only the owner could be taxed on farm receipts. Rather, the decision turned on the Government's failure to carry its burden of proof that Poonian himself had realized income. Finding no merit to the contention that the factor of ownership alone is outcome-determinative, we conclude, as did the court in *Poonian*, that the only question is whether the Government properly proved Lawhon's tax liability on the proceeds from the Associates' fruit sales.

The assignment of error which Lawhon presses most strongly concerns the burden of proving reductions for tax purposes from gross fruit receipts. The Government's case was based upon the specific items method of proof; that is, the prosecution first introduced all the produce receipts which it considered to be income to the taxpayer, then presented its view of the items which should be subtracted from the gross proceeds to arrive at Lawhon's taxable income. The nub of Lawhon's position is that the Government had the burden not just to show the items which it considered to be reductions, but also to introduce evidence of any item which the jury might find to be an allowable reduction. More specifically, the contention is that the Government should have introduced evidence of the amounts Lawhon gave to his children in the form of certificates of deposit, for example, even though the prosecution considered them to be not reductions but gifts. This argument seems to rely upon an analogy to a prosecution for tax evasion based on the net worth theory, *see generally* Holland v. United States, 1954, 348 U.S. 121, 75 S. Ct. 127, 99 L.Ed. 150, in which the prosecution has the burden to follow up on all reasonable leads which, if true, could establish the taxpayer's innocence. *See also* Merritt v. United States, 5 Cir. 1964, 327 F.2d 820. Similarly, in cases based on the bank deposit method of prosecution, the Government is required to prove that it has tried to discover and exclude all non-income items from the alleged tax deficiency. *See, e. g.*, United States v. Morse, 1 Cir. 1974, 491 F.2d 149; Kirsch v. United States, 8 Cir. 1949, 174 F.2d 595. None of these cases, however, undergirds the proposition that the Government must introduce

those items which it does not believe entitle the taxpayer to a reduction in the alleged understatement of his taxes. We find neither precedent nor good reason for reversing this conviction because the Government failed to shoulder the burden of introducing evidence of all items which the taxpayer claims should have been allowed as reductions.

To the extent that the district court's original order in the first trial granting a new trial [5] is inconsistent with our conclusion, we disagree with it. While the order is not entirely free from ambiguity, a fair interpretation of the court's language reveals two concerns: first, that the Government's summary chart be based upon evidence before the jury; and second, that the jury have before it evidence which would support the taxpayer's contention that other reductions should have been allowed. After reviewing the record and exhibits, we are satisfied that both of these conditions were met.

■ Moreover, we detect no infirmity in the manner in which the summary chart was utilized. The primary evidence on which the chart was based was available for testing the accuracy of the summary; the agent who prepared the chart was available for cross-examination; and the jury was properly instructed that the chart was merely to aid in understanding the underlying documents and records. United States v. Kane, 5 Cir. 1971, 450 F.2d 77, 85, cert. denied, 1972, 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810; Gordon v. United States, 5 Cir. 1971, 438 F.2d 858, 876–877, cert. denied, 404 U.S. 828, 92 S.Ct. 139, 30 L. Ed.2d 56. Furthermore, contrary to the appellant's assertion, the jury was instructed that the summary chart presented only the Government's view of the case. Myers v. United States, 5 Cir. 1966, 356 F.2d 469, cert. denied, 384 U. S. 952, 86 S.Ct. 1572, 16 L.Ed.2d 548.

Apparently the Government changed its view of some of the reductions which it was willing to allow in the revised summary produced at the second trial. The defense did have the opportunity to introduce evidence of any additional reductions which would have negated the charges that Lawhon understated his income for the three years in question. Moreover, defense counsel questioned the agent who prepared the charts and elicited from him the fact that he had omitted items which Lawhon believed should have been included. Thus all the relevant evidence was before the jury, and the appellant cannot complain because the jury chose not to accept his theory of the case.

■ We mention briefly several minor issues related to the use of the charts. First, the captions on the charts are said to have been unduly suggestive. For example, one read, "Computation of Fruit *Income*." (emphasis added). Although the use of a more neutral term, such as "Fruit Receipts," might have been preferable, we refuse to ascribe error to a non-prejudicial choice of semantics. *Compare* Lloyd v. United States, 5 Cir. 1955, 226 F.2d 9, 17. Secondly, we are unpersuaded that the district court abused its discretion in refusing to allow a summary chart prepared by the defense to be distributed to the jury during closing argument, *cf*. United States v. Stone, 5 Cir. 1973, 472 F.2d 909, 914, particularly since defense counsel was allowed to use a marker and easel to illustrate its contentions. We are also unpersuaded that the use of the Government's charts in this case was similar to that method condemned in Steele v. United States, 5 Cir. 1955, 222 F.2d 628. The record simply does not support the contention that the agent who prepared the charts attempted to pass on the credibility of the witnesses or otherwise to invade the province of the jury.

We have considered the other contentions raised by Lawhon and conclude that the judgment is free from reversible error.

Affirmed.

5. *See* note 2, *supra.*