UNITED STATES of America,
Appellant,

v.

William F. GRIFFIN, Jr.,
Defendant, Appellee.

No. 86–1219.

United States Court of Appeals,
First Circuit.

Argued Oct. 10, 1986.
Decided March 26, 1987.

Donald W. Searles, Tax Div., Dept. of Justice, with whom Michael L. Paup and Robert E. Lindsay, Tax Div., Dept. of Justice, Roger M. Olsen, Asst. Atty. Gen., Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief for appellant.

John Foskett with whom Steven J. Brooks and Deutsch Williams Brooks & DeRensis, P.C., Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

The United States appeals from an order issued by the United States District Court for the District of Massachusetts dismissing 12 counts in a 13 count indictment. The indictment had been returned by a federal grand jury sitting in the Southern District of West Virginia. For the convenience of the parties, the case was transferred for trial to the District of Massachusetts. Fed.R.Crim.P. 21(b). The court dismissed the 12 counts upon the belief that the charged offenses were committed in

Massachusetts and thus fell beyond the indictment power of the grand jury in West Virginia.[1] We affirm.

**I.**

On April 15, 1985, a federal grand jury sitting in Charleston, West Virginia, returned a 13 count indictment against David Walsh, Robert Goldberg, Francis Percuoco, and William Griffin, Jr., all of whom the indictment alleged were Massachusetts residents.

Count 1 charged the four defendants with conspiracy to defraud the United States by, among other things, obstructing the Internal Revenue Service's efforts to ascertain, assess, and collect federal taxes. According to the indictment, the goal of the conspiracy was to syndicate and promote four fraudulent tax shelters related to coal property in West Virginia. The criminal scheme allegedly began in 1977, when entities owned by defendant Walsh purchased coal property located in the Southern District of West Virginia. Walsh and Goldberg then formed NRG Coal Corporation, which created at least four limited partnership tax shelters connected to the West Virginia properties. The indictment asserted that the partnerships mined no coal, nor ever intended to—they purportedly existed solely to allow investors to claim over $14,000,000 in fraudulent tax deductible losses.

Unlike Walsh and Goldberg, defendants Percuoco and Griffin were not members of NRG Coal Corporation or any of the partnerships involved with the tax shelters. Percuoco, an accountant, and Griffin, a lawyer, rendered services in Massachusetts to Walsh, Goldberg, and the corporations and partnerships involved in the West Virginia venture. These services allegedly were instrumental to the creation and marketing of the fraudulent tax shelters.

Counts 2–13, unlike Count 1, were not conspiracy counts. Rather, brought under 18 U.S.C. § 2(a) (1982) and 26 U.S.C. § 7206(2) (1982), each count charged that the four named defendants, "aided and abetted by each other, did willfully and knowingly cause and assist in the preparation and presentation" of a tax return that was fraudulent and false as to material matters.[2] This appeal is concerned solely with Counts 2–13.

Walsh and Goldberg entered into plea agreements in the United States District Court for the Southern District of West Virginia. Shortly thereafter, Griffin and Percuoco sought and received a change of venue transferring the case, for the parties' convenience, from the Southern District of West Virginia to the District of Massachusetts. Griffin and Percuoco subsequently moved in the latter court for the dismissal of Counts 2–13, arguing that the return of those counts in West Virginia was improper because all their alleged criminal conduct had taken place exclusively in Massachusetts.[3] The district court granted the motion, and the government perfected this interlocutory appeal. *See* 18 U.S.C. § 3731 (1982) (allowing United States immediately to appeal from a district court's order dismissing one or more counts in an indictment).[4]

---

**1.** The district court's opinion is published under the name of *United States v. Percuoco*, 630 F.Supp. 784 (D.Mass.1986).

**2.** Ten of the 12 allegedly fraudulent returns involved the Forms 1065 filed by four limited partnerships created to sell the tax shelters. The remaining counts pertained to the tax returns for Joseph L. Gallagher, for whom the indictment claimed defendants established a private coal tax shelter. The district court found that all of these returns were filed in Massachusetts, *United States v. Percuoco*, 630 F.Supp. 784, 785 (D.Mass.1986), a conclusion neither party challenges on appeal.

**3.** Griffin and Percuoco did not claim that Count 1, the conspiracy count, was wrongly returned in West Virginia. It is well established that a conspirator may be tried wherever any overt acts of the conspiracy were committed, even if he were not personally present in the district when these acts took place. *See* 18 U.S.C. § 3237(a) (Supp. II 1985); *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912).

**4.** Defendant Percuoco has since entered into a plea agreement, and thus only one defendant—William Griffin, Jr.—remains a party to this appeal.

## II.

Counts 2–13 charged the four defendants with aiding and assisting in the preparation and presentation of fraudulent tax returns, in violation of 18 U.S.C. § 2(a) (1982) and 26 U.S.C. § 7206(2) (1982). Section 2(a), the general aiding or abetting statute, provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Section 2(a) does not, by itself, criminalize any conduct; it simply makes one who aids or abets in the commission of some substantive offense punishable as a principal.

Section 7206(2), however, delineates a substantive offense. It imposes criminal penalties on any person who

> [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.

In addressing defendants' motion to dismiss Counts 2–13, the district court framed the relevant inquiry as follows:

> [i]t is undisputed that everything that Percuoco and Griffin are accused of doing took place in Massachusetts. It is also undisputed that defendants Walsh and Goldberg performed a number of acts in West Virginia. At issue is whether defendants Percuoco and Griffin may be indicted in West Virginia for violating § 7206(2) solely because of the actions in that state of their codefendants Walsh and Goldberg.

*United States v. Percuoco*, 630 F.Supp. 784, 785 (D.Mass.1986). Ruling that an indictment is invalid if returned in a district other than where the crime was committed, the court concluded that Griffin and Percuoco, having never acted in West Virginia, could not be indicted in that state for violating section 7206(2).

The district court considered but rejected the government's argument that the doctrine of continuing offenses, embodied in 18 U.S.C. § 3237(a) (Supp. II 1985),[5] would allow Griffin to be tried for a section 7206(2) violation not only where he acted (Massachusetts) but also where Walsh and Goldberg, whom the government labelled "principals," had acted (West Virginia). Although recognizing case law holding that accessories may generally be tried where the principal acted, the court refused to regard section 7206(2) as an "accessorial" statute. From the language of the statute it concluded that "a person who assists another in the filing of a fraudulent tax return acts as a principal" under section 7206(2) and thus may be indicted only where he acted. *Id.* at 786.

On appeal, the government contends that the district court erred in holding that Griffin could be indicted only in Massachusetts, and not in West Virginia. It does not, however, challenge the court's finding that "everything ... Griffin [is] accused of doing took place in Massachusetts." The government also concedes that a federal grand jury may return indictments only for crimes committed within the district in which it sits. Accordingly, we need not determine whether a grand jury that may properly indict an individual on one count (here, the conspiracy count) has the ancillary power to indict that individual on related crimes arising out of the same operative facts. Nor need we consider whether the West Virginia indictment, if returned in the wrong district, could constitute harmless error. We are presented only with the narrow task of determining where Griffin's alleged crime was committed, an issue of first impression under section 7206(2), and

---

5. Section 3237(a) provides, in pertinent part, [e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

of examining the government's "aiding or abetting" analogs.

### III.

■ Like most federal criminal statutes, section 7206(2) does not expressly identify where a violation is deemed to have occurred. The Supreme Court, when interpreting a statute that similarly failed to identify the situs of a crime, advised that "the *locus delecti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946); *accord Travis v. United States,* 364 U.S. 631, 635, 81 S.Ct. 358, 361, 5 L.Ed.2d 340 (1961).[6] Courts often conduct this inquiry by examining the key verbs defining the criminal offense. *See, e.g., United States v. Tedesco,* 635 F.2d 902, 905 (1st Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981).

The key verbs in section 7206(2) are "aids," "assists in," "procures," "counsels," and "advises" in the preparation or presentation of a false return, affidavit, claim, or other document. Here, any advice or aid Griffin provided in the preparation of the return in question undisputably took place in Massachusetts. Furthermore, the tax returns themselves were filed in Massachusetts.[7] Thus, like the district court, we conclude that if Griffin violated section 7206(2), that violation occurred in Massachusetts. Given the government's concession that a grand jury may return indictments only for crimes committed within its district, we hold that Counts 2–13 were improperly returned in West Virginia.

The government advances two arguments against this position, neither of which is persuasive. It accurately notes that one accused under 18 U.S.C. § 2(a) of aiding or abetting in the commission of some substantive crime may be prosecuted not only where he committed the accessorial acts, but also where the principal committed the substantive crime. *United States v. Brantley,* 733 F.2d 1429, 1434 (11th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985); *United States v. Kibler* 667 F.2d 452, 454 (4th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); *United States v. Gillette,* 189 F.2d 449, 451–52 (2d Cir.), *cert. denied,* 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951). Further noting that both sections 2(a) and 7206(2) criminalize the aiding or abetting of an offense against the United States, the government asserts that as a matter of logic the two provisions must be construed identically, thus allowing a section 7206(2) aider or assister to be indicted where the principal crime occurred.

■ We find two fallacies in the government's argument. First, even supposing section 7206(2) made Griffin and Percuoco mere "accessories," we are unable to see how this would create venue in West Virginia for Griffin's offense. The government nowhere attempts to define the "principal" crime to which Griffin was supposedly an accessory. The most logical candidate would be the filing of a false return as to which the "accessory" rendered assistance. If so, the supposed "principal crime," like the accessorial act, occurred in Massachusetts where the return was filed. *See, e.g., United States v. Lawhon,* 499 F.2d 352, 355 (5th Cir.), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820

---

**6.** As to some crimes, an accused need not have been personally present in the district where the crime was committed. *Travis v. United States,* 364 U.S. 631, 634, 81 S.Ct. 358, 361, 5 L.Ed.2d 340 (1961); *Johnston v. United States,* 351 U.S. 215, 220–21, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956).

**7.** Because the returns were filed in Massachusetts, we do not decide whether a section 7206(2) violation may occur where the false returns were filed, in addition to where one who aided or assisted in preparing or presenting

the returns acted. *See, e.g., United States v. Lawhon,* 499 F.2d 352, 355 (5th Cir.) (under 26 U.S.C. § 7206(1) (1982), venue is appropriate both where the return was made and subscribed and "in the district in which the return was filed"), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820 (1974). We thus leave open, for example, whether Walsh and Goldberg could have been indicted in Massachusetts even if their personal acts of aiding or assisting had all occurred in West Virginia.

(1974) (venue under 26 U.S.C. § 7206(1) may be both where return was made and subscribed, and "in the district in which the return was filed"). *See* note 5, *supra.*

To be sure, West Virginia was apparently the situs of the coal venture and possibly of other crimes related to it. And, it may be, that Walsh and Goldberg, while in West Virginia, assisted in preparing the false returns, and were ring leaders in whatever illegalities occurred. The fact remains, Counts 2–13 all charge each of the four defendants with the same crime—assisting in the preparation and presentation of false returns.. We are unable to see how West Virginia qualifies as the place where the *principal* crime was committed, or as the place where "the principals" as distinct from "the accessories" acted. Nothing in the indictment shows—in relation to Counts 2–13—that Walsh and Goldberg in West Virginia were any more "principals" than were Griffin and Percuoco in Massachusetts. All are charged, identically, with assisting in the preparation of false returns.

■ Second, as the district court held, section 7206(2) is not an accessorial statute. It is a self-contained criminal statute that requires no reference to any other substantive part of the criminal code. Any person who aids or assists in the preparation or presentation of a false return *is* the principal, as the statute clearly demonstrates by making irrelevant *"whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return...."* (Emphasis added.)

Section 2(a) stands on an entirely different footing. That section does not, by itself, criminalize any conduct, but instead allows one who aids or abets the violation of a *separate* criminal prohibition to be treated as a principal. Thus, courts have logically read section 2(a) as permitting an aider or abettor to be tried not only where he acted but also where the principal crime took place. *See, e.g., United States v. Brantley,* 733 F.2d 1429, 1434 (11th Cir. 1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985). Here, no "principal crime" other than aiding or assisting can be meaningfully identified (and, even were filing a false return to be regarded as the "principal crime," it occurred in Massachusetts, not West Virginia).

■ For the foregoing reasons, the government's attempt to equate sections 7206(2) and 2(a) cannot succeed. In determining where a violation of section 7206(2) occurs, we must look only to the conduct specifically enumerated in the statute, not, as the government urges, to some related criminal activity. Because Griffin acted only in Massachusetts, his violation of 7206(2), if any, did not occur in West Virginia. The government cannot alter this by pointing to section 2(a) or the steps Griffin's codefendants took in West Virginia.

■ As a variation on the foregoing argument, the government contends that Griffin should be viewed, under section 2(a) itself, as aiding or abetting his codefendants, Walsh and Goldberg, in violating section 7206(2) (*i.e.,* aiding or abetting his codefendants' aiding or assisting in the preparation of a false return). This argument ties into the allegation in the indictment that the defendants were "aided and abetted by each other." Since Walsh and Goldberg apparently acted in West Virginia, Griffin's aiding or abetting of them is argued to have provided venue in that state as against him.

The trouble with this argument is that it requires us to view Griffin as an accessory, when clearly he is already a principal—and, inconsistently, to view Walsh and Goldberg as principals even though they are charged precisely with the same criminal activity (assisting in the preparation of a false return) as is Griffin. Although Walsh and Goldberg may have initiated the coal mining venture and been its primary beneficiaries, under section 7206(2) each defendant was charged with performing the same criminal activity—aiding or assisting in the preparation of a false return. No legal justification exists for treating some defendants as principals and others as accessories.

Moreover, it seems strained to posit a section 2(a) violation of section 7206(2) (*i.e.,* "aiding or abetting" the aiding or assisting" of the preparation of a false return). If one aids or assists in the preparation of a false return, section 7206(2) has itself been violated, and any discussion of section 2(a) is unnecessary.

There is another argument that could be made for the government's position. Treating all four defendants properly as principals, one might argue that venue should be found as to *all* defendants in each and every district where one or more of them aided or assisted in the preparing of false returns. In other words, where multiple section 7206(2) defendants act in concert, venue arguably might exist against all wherever one or more of them acted. This theory might be derived from an expanded reading of 18 U.S.C. § 3237(a), *see* note 5, *supra,* which *inter alia* underlies the concept of venue in conspiracy cases. The government has not, however, pointed out any authority supporting the use of conspiracy venue analysis in crimes not requiring concerted activity, and we have uncovered none. Nor has the government pursued this approach. We accordingly do not accept it.

*Affirmed.*