# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4100

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Merwyn L. Levering, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 14, 2005
Filed: December 8, 2005

_____

Before RILEY, FAGG, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Following a three-day jury trial, Merwyn L. Levering (Levering) was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and of possessing a stolen firearm in violation of 18 U.S.C. § 922(j). The district court sentenced Levering under the Armed Career Criminal Act (ACCA), see 18 U.S.C. § 924(e), U.S.S.G. § 4B1.4, to 262 months' imprisonment. On appeal, Levering argues the district court erred by denying his motion for mistrial and by making factual determinations that enhanced his sentence. After careful review of the record, we affirm Levering's convictions, but reverse and remand for resentencing.

## I.    BACKGROUND

On February 10, 2004, the Omaha, Nebraska, residence of Charles Marlowe (Marlowe) was burglarized. Several firearms and ammunition were stolen, including a Colt .45 automatic handgun, a Colt .45 rifle, two loaded magazine clips, and two empty clips. Marlowe reported the burglary to the police.

On February 14, 2004, in violation of an active protection order, Levering entered the home of his former girlfriend, Rhonda Thomas (Thomas). The couple began arguing. Thomas's son intervened and punched Levering, who fell to the floor. Levering drew a gun from his pocket, fired several shots, and ran from the house.

Omaha Police Officer James Mosby (Officer Mosby) and Crime Lab Technician William Henningsen (Henningsen) investigated the scene. They observed several bullet holes in the walls and ceiling of the house and collected six .45 caliber shell casings from the floor.

Five days later on February 19, 2005, Omaha Police Officer Stephen Worley (Officer Worley) attempted to stop a black SUV for speeding. The driver of the SUV accelerated and lost control of the vehicle, causing it to go off the road and flip onto its roof. An occupant of the SUV, later identified as Levering, attempted to flee the scene but was apprehended by police. Approximately 10 to 15 feet from where the SUV came to rest, police found a Colt .45 automatic handgun loaded with six rounds of ammunition. Inside the SUV, police recovered two boxes: a gold box filled with jewelry and an ammunition box containing 18 rounds of ammunition.

Police searched Levering at the scene and recovered several items, including a black ski mask, a .45 caliber magazine, a .45 caliber round of ammunition, a woman's necklace, a woman's watch, three women's rings, and five pairs of sunglasses with price tags. Police took Levering to a local hospital where a subsequent search uncovered another .45 caliber round inside Levering's coat pocket.

A woman's diamond ring and two checks made out to another individual were also recovered from inside Levering's pants pocket.

After performing ballistics tests, Omaha Police Crime Lab Technician Daniel Bredow (Bredow) concluded the shell casings recovered from Thomas's residence on February 14, 2004, were fired from the Colt .45 recovered from the scene of Levering's SUV accident on February 19, 2004. On April 22, 2004, a two-count indictment charged Levering with being a felon in possession of a firearm and possessing a stolen firearm. The case was tried to a jury. On August 13, 2004, the jury found Levering guilty on both counts.

The United States Probation Office prepared a Presentence Investigation Report (PSR) and suggested Levering was an armed career criminal subject to enhancements under the ACCA, 18 U.S.C. § 924(e). The PSR credited Levering with using a firearm in connection with a crime of violence, assigning Levering an offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A). Levering had a criminal history category VI with 24 criminal history points, before calculating his status under the ACCA. Based on a total offense level of 34 and criminal history category VI, the Guidelines imprisonment range was 262 to 327 months.

At sentencing on December 1, 2004, the court took judicial notice of three exhibits previously introduced at trial as proof of Levering's prior violent felony convictions. The exhibits documented (1) a 1989 Nebraska conviction for first degree assault and use of a firearm to commit a felony; (2) a 1994 Iowa conviction for operating a motor vehicle without the owner's consent, and assault while participating in a felony; and (3) a 2000 Nebraska conviction for escape from official detention.

Levering objected under Blakely v. Washington, 542 U.S. 296 (2004), arguing his prior convictions and any enhancements for possessing a weapon during the commission of a violent felony should have been presented to the jury and found

-3-

beyond a reasonable doubt. Levering specifically objected to the 2000 Nebraska conviction for escape being deemed a qualifying predicate offense under the ACCA, and further objected that the offense documentation did not show Levering was represented by counsel at the time of his guilty plea. The court overruled these objections.

In overruling Levering's objection to possessing a firearm in connection with another felony offense, the court recalled Thomas testifying Levering fired a weapon inside an occupied dwelling in the direction of individuals present. The court reasoned this fit the criteria of use of a firearm in connection with another felony offense. In finding Levering had armed career criminal status, the court reasoned, "based upon the evidence introduced at the time of trial and specifically Exhibits 8, 9, and 11, there is ample showing of the prior convictions necessary for the armed career criminal status."

The court adopted the factual findings of the PSR and determined Levering had a total offense level of 34 and a criminal history category VI. As to Count I, the court found the sentencing range under the Guidelines was 262 to 327 months' imprisonment with a statutory range of 15 years to life. As to Count II, the Guidelines range was 262 to 327 months' imprisonment with a statutory range of zero to 10 years. The court inquired about placement within the Guidelines range and determined a sentence at the low end of the range was appropriate. Levering was sentenced to 262 months' imprisonment on Count I and 120 months' imprisonment on Count II, to be served concurrently.

On appeal, Levering argues (1) he is entitled to a new trial due to improper remarks made by the prosecutor during closing argument, (2) the district court erred by enhancing his sentence based on facts not found by a jury, and (3) the district court erred in finding his prior escape conviction constituted a violent felony.

-4-

## II.    DISCUSSION

### A.    Prosecutorial Misconduct

Levering argues he was denied a fair trial due to an improper remark made by the prosecutor during closing argument. The district court is afforded broad discretion in controlling closing arguments, and we overturn its decisions only when the district court clearly abuses that discretion. United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996). "'To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial.'" United States v. Ehrmann, 421 F.3d 774, 783 (8th Cir. 2005) (quoting United States v. King, 36 F.3d 728, 733 (8th Cir. 1994)).

In his rebuttal closing argument, the prosecutor said:

> So again it's all before you, ladies and gentlemen, the evidence and the exhibits and the testimony. It establishes beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant attempted to run away from these crimes at the scene on February 19th. I ask that you not let him run away again. The law protects the community but the community enforces the law. And if you represent the community here, you decide. Thank you.

Defense counsel objected and moved to strike. The court overruled the objection.

On appeal, Levering focuses on the last two sentences of the rebuttal closing argument and complains the prosecution impermissibly implored the jury to act as the "conscience of the community." We disagree.

Those final remarks must be read in the context of the prosecutor's entire rebuttal. The prosecutor first asked the jury to focus its attention on the testimonial evidence presented and how that evidence satisfied the government's burden of proof. He then urged the jury to follow the court's instructions and apply the evidence to the

elements of the crimes charged. Finally, he admonished the jury to find the defendant guilty of those crimes. The remark, "the community enforces the law, you represent the community, you decide," was not improper in this context. United States v. Lewis, 547 F.2d 1030, 1036-37 (8th Cir. 1976) (finding a plea to the jury to be the conscience of the community is not impermissible unless it is calculated to inflame, and an appeal to the jury to be the "public's last shield" did not "exceed permissible bounds of advocacy"). This single remark by the prosecutor did not prejudice Levering's right to a fair trial. See United States v. Lopez, 414 F.3d 954, 960 (8th Cir. 2005) (reasoning even if the district court failed to sustain an objection to the single improper use of a word, defendants' substantial rights would not have been so affected as to deprive them of a fair trial). We conclude the district court did not abuse its discretion in overruling defense counsel's objection.

## B.    Sentencing Issues

We review the district court's findings of fact for clear error and its application of the sentencing guidelines de novo. United States v. Sprouse, 394 F.3d 578, 580 (8th Cir. 2005).

### 1.    Armed Career Criminal Status

Levering argues the district court erred when it determined his 2000 Nebraska escape conviction was a violent felony because (1) the court is not bound by and should not follow previous cases holding an escape constitutes a violent felony, (2) there was no evidence he was represented by counsel at the time of the escape conviction, and (3) his sentence was enhanced based on findings made by the court, rather than a jury, in violation of his Sixth Amendment rights. Levering's arguments are without merit.

Levering urges us to ignore precedent and find his 2000 Nebraska conviction for "escape from official detention" is not a predicate offense under the ACCA. We decline to do so. In United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001), we

held "every escape, even a so-called 'walkaway' escape, involves a potential risk of injury to others. . . . Given this reality, we have no difficulty in concluding that escape qualifies as a crime of violence pursuant to U.S.S.G. § 4B1.2." After Nation, another panel of this circuit discussed whether Nation's definition of escape as a "crime of violence" in section 4B1.2 of the Guidelines also applied to a "violent felony" under section 924(e)(2)(B)(ii). United States v. Abernathy, 277 F.3d 1048, 1051 (8th Cir. 2002). The Abernathy court concluded the "language of § 4B1.2(a)(2) is identical to the language of § 924(e)(2)(B)(ii), in that both define a 'crime of violence' and a 'violent felony' as a crime that, among other things, 'involves conduct that presents a serious potential risk of physical injury to another.'" Id. (citations omitted). The court then disregarded the defendant's insistence he "merely walked away from his place of incarceration," and the court determined the escape conviction constituted a violent felony under section 924(e)(2)(B)(ii). Id. Following Abernathy, we conclude Levering's escape conviction, which stemmed from Levering kicking out the back window of a police cruiser and running from the officers, similarly constitutes a violent felony under the ACCA.

Levering next attempts to collaterally attack his 2000 Nebraska escape conviction, arguing it is invalid because there is no record he was represented by counsel. "Generally, defendants may not collaterally attack prior convictions used for sentencing enhancements." Moore v. United States, 178 F.3d 994, 997 (8th Cir. 1999). A narrow exception to this rule applies if the prior conviction was obtained in violation of the defendant's right to counsel. Id. "Under this exception, the government has the initial burden of proving the fact of conviction, and then the defendant must show that the conviction was constitutionally infirm." Id.

At trial, the government introduced Exhibit 8, which documented Levering's 2000 Nebraska escape conviction. At sentencing, the district court judicially noticed the exhibit. Therefore, the government met its initial burden of proving the fact of the prior conviction, and the burden shifted to Levering to show the conviction was

constitutionally infirm.  Id.  Levering argues none of the records in Exhibit 8 show he was represented by counsel or waived his right to counsel; therefore, he is entitled to the benefit of the exception.[1]  Levering contends the lack of documentary evidence of representation makes the conviction invalid under Carnley v. Cochran, 369 U.S. 506, 516 (1962).

Levering reads Carnley too broadly.  In Carnley, the Supreme Court found it was impermissible to presume a defendant waived the right to counsel when the record was silent on the issue.  Id. at 516-17.  Carnley is inapplicable to the present case, however, since there is no assertion Levering waived his right to counsel.  More importantly, the Nebraska sentencing order signed on January 31, 2000, belies Levering's assertion.  The order reports Steve Kraft was Levering's counsel and represented Levering at sentencing.  Under the "presumption of regularity," it was permissible for the district court to infer Levering was likewise represented at the time of conviction.  Parke v. Raley, 506 U.S. 20, 31 (1992) (stating, "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.") (distinguishing Burgett v. Texas, 389 U.S. 109, 114-15 (1967)).  Levering has failed to show an exception to the general rule prohibiting collateral attack of prior convictions used for sentencing enhancements applies in this case.  Moore, 178 F.3d at 997.

Levering also argues his Sixth Amendment rights were violated because the question of whether his escape constituted a violent felony was not decided by a jury beyond a reasonable doubt.  Levering is aware of the Supreme Court's pronouncement in Almendarez-Torres v. United States, 523 U.S. 224, 240-44 (1998), that prior felony

_____

[1]Nowhere in his pleadings does Levering assert he was unrepresented in his 2000 Nebraska escape conviction.  He merely argues the conviction is infirm because the records do not show he was represented.

convictions are sentencing factors for the court, not a fact for the jury. Nonetheless, Levering argues current law has called the holding of Almendarez-Torres into question and we need not follow it in the present case.

The law on this issue is well-settled. "[A] prior felony conviction is a sentencing factor for the court, not a fact issue for the jury." United States v. Carrillo-Beltran, 424 F.3d 845, 848 (8th Cir. 2005) (citing Almendarez-Torres, 523 U.S. at 240-44); United States v. Wilson, 406 F.3d 1074, 1075 (8th Cir. 2005), cert. denied, 126 S. Ct. 292 (2005). Almendarez-Torres is still good law, which we will continue to follow until the Supreme Court instructs otherwise.

For the reasons stated, we find the district court did not violate Levering's Sixth Amendment rights by making findings regarding his prior felony convictions.

### 2. Booker Error

Although the district court committed no Sixth Amendment violation in making findings regarding Levering's prior felony convictions, "[t]he district court (understandably) committed Booker error by applying the Guidelines as mandatory, and the error is plain, that is, clear or obvious, at this time." United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc), cert. denied, 126 S. Ct. 266 (2005). Levering made a Blakely objection at sentencing, thereby preserving this issue on appeal. Id. at 549. Therefore, we review the district court's sentence for reasonableness under the harmless error doctrine. United States v. Haidley, 400 F.3d 642, 644 (8th Cir. 2005) (citing United States v. Booker, 125 S. Ct. 738, 769 (2005)). The harmless error doctrine, set forth in Federal Rule of Criminal Procedure 52(a), states "any error . . . that does not effect substantial rights must be disregarded." In cases such as the present, "the government is required to establish that this court does not have 'grave doubt' whether the error substantially influenced the outcome of the proceedings." United States v. Ellis, 417 F.3d 931, 934 (8th Cir. 2005) (citing Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Before imposing Levering's sentence, the court remarked, "[a]lthough a low-end sentence has been recommended in the sentencing recommendation, I am interested in hearing argument about why I should not sentence higher than the low end. I don't see any mitigating circumstances in this case. So that's what I'm interested in hearing in allocution." After imposing sentence at the low end of the range, the court substantiated its decision, stating:

> In choosing a sentence at the low end of the guideline range, I am holding out some hope that the defendant will make a decision in the future to participate in rehabilitation programs within the Bureau of Prisons and to make some changes in his life. I don't think he has reached that point now.
>
> . . . .
>
> So, although I think that it's a goal of the criminal justice system to try to keep Mr. Levering incarcerated for a very significant period of time, I am giving deference to the argument that the time imposed is very significant and I hope it's long enough.

The government asserts Levering's sentence is reasonable and proper since the district court was cognizant of the potential sentences it could impose, yet sentenced Levering at the low end of the Guidelines range.

While it is true the district court sentenced Levering at the bottom of the applicable range and remarked there were no apparent mitigating circumstances, this does not satisfy the government's burden. While relevant, the remarks do not meet the government's burden to show the district court would have imposed the same sentence under an advisory sentencing scheme. United States v. Love, 419 F.3d 825, 829 (8th Cir. 2005) (citing United States v. Ellis, 417 F.3d 931 (8th Cir. 2005)). Under the circumstances of Levering's case, we will not speculate whether the court's determination would have been the same under an advisory Guidelines scheme. That is a decision left to the district court's discretion. Id. We do not imply in any manner

-10-

whether Levering's sentence should be lower, higher, or the same. We will, therefore, remand this case to the district court to resentence Levering consistent with <u>Booker</u> under the now advisory Guidelines scheme.

## III.    CONCLUSION

For the reasons stated, we affirm Levering's convictions, vacate his sentences, and remand to the district court for resentencing in light of <u>Booker</u>.

_____