# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1444
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Obi, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: December 17, 2021
Filed: February 8, 2022

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

At approximately 11:00 p.m. on June 4, 2019, Little Rock police officers responded to a 911 call reporting a shooting in the Wakefield neighborhood, a high crime area. Antonio Williams, Myesha Kinard, Jennifer McCranie, and Alexandra Bogan reported that Anthony Obi, Jr., had fired several shots at the car in which they were riding near Bogan's residence. Obi was arrested when he returned to his nearby residence a short time later, without a firearm. Obi was charged, and a jury convicted

him, of being a felon in possession of ammunition, namely, five .45-caliber shell casings found at the scene of the shooting. See 18 U.S.C. § 922(g)(1). The district court[1] sentenced Obi to 96 months imprisonment. Obi appeals his conviction and sentence, arguing (i) there was insufficient evidence he possessed ammunition, (ii) the government made improper prejudicial remarks during closing argument, and (iii) the district court imposed a substantively unreasonable sentence. We affirm.

## I. Sufficiency of the Evidence

At trial, Obi stipulated to two elements of a § 922(g)(1) offense -- a prior conviction for a crime punishable by imprisonment exceeding one year, and knowledge he is in a class of persons therefore barred from possessing a firearm or ammunition. See United States v. Coleman, 961 F.3d 1024, 1027 (8th Cir. 2020), cert. denied, 141 S. Ct. 2819 (2021). To prove the remaining element at issue on appeal -- that Obi knowingly possessed ammunition -- the government presented evidence (i) that Obi was the shooter, and (ii) that the shell casings found on the street near the victims' car established that the shooter possessed ammunition. See United States v. Weaver, 558 F. App'x 727, 728 (8th Cir. 2014) ("sufficient evidence supported a felon-in-possession-of-ammunition conviction where the firearm defendant used was never located, but police found defendant's spent cartridges at the scene of the shooting," citing United States v. Miner, 108 F.3d 967, 969 (8th Cir.), cert. denied, 522 U.S. 904 (1997)). Obi argues the government's evidence was insufficient to meet its burden of proof beyond a reasonable doubt. We review the sufficiency of the evidence *de novo*, viewing the evidence and the jury's credibility determinations in the light most favorable to its verdict and reversing only if no reasonable jury could have found Obi guilty. United States v. Ganter, 3 F.4th 1002, 1004 (8th Cir. 2021).

------

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

At trial, each of the four victims testified to the shooting and the events leading up to the shooting. Williams, Kinard, and McCranie picked up Bogan and drove to a store in Williams's car to purchase milk for Bogan's infant. Returning, they saw Obi, the father of Bogan's child, on the porch. In the midst of a dispute with Obi, Bogan told Williams to keep driving. Circling the block, Williams saw Obi approach the car, reach under his shirt, and pull out a firearm. Williams attempted to drive away. Obi fired several shots at the driver's side of the car. One bullet came through the driver's window, barely missing Williams, and ricocheted around the cabin before coming to rest on the passenger side front door. All four eyewitness victims testified that Obi was the shooter. Each was throughly cross-examined by defense counsel regarding the events of the evening, how much they could see from inside the vehicle, and why they were able to identify Obi as the shooter. Bogan, who had told law enforcement some forty times that Obi shot at the vehicle, was reluctant to testify against the father of her child and admitted on cross exam that she might have made a mistake. But on redirect, she unequivocally stated, "It was Anthony."

Regarding the ammunition, crime-scene specialist Meagan Buchert testified that she found five .45-caliber shell casings at the scene of the shooting. One was standing up and none were run over or damaged, indicating no heavy traffic before their discovery. Buchert also testified that the bullet recovered inside Williams's car appeared to be a .45-caliber round, like the casings found in the street, and that no other casings were found at the scene of the shooting. Detective Todd Davis testified there was an apparent bullet strike to the driver's side window when he arrived at the scene and interviewed the victims.

On appeal, Obi argues the evidence he possessed ammunition was insufficient. There was no DNA or fingerprint evidence on the shell casings, the firearm used in the shooting was never recovered, and the victims' testimony did not preclude that the casings were already in the street before the shooting. Therefore, "the jury had to resort to speculation and conjecture." We disagree. Viewing the trial evidence in the

light most favorable to the jury's verdict, as we must, a reasonable jury could find from the victims' testimony that Obi was the shooter; and from the physical evidence, the victims' testimony, and the testimony of expert Buchert and Detective Davis that the shell casings were discharged from the shooter's firearm and therefore had been ammunition knowingly in the shooter's possession. "[P]roof that a defendant possessed a firearm may be established solely by eyewitness testimony where the gun is not recovered or introduced at trial." United States v. Anderson, 78 F.3d 420, 423 (8th Cir. 1996). The same principle applies in a felon-in-possession-of-ammunition prosecution. See United States v. Kelly, 436 F.3d 992, 996 (8th Cir. 2006).

The district court did not err in denying Obi's post-verdict motion for judgment of acquittal or a new trial based on insufficiency of the evidence.

## II. Prosecutor Closing Argument Issues

The major focus of the government's initial closing argument, not surprisingly, was sympathy for the four witnesses who were victims of the shooting -- "[f]our souls that had done nothing wrong that day" who identified Obi as the shooter who endangered their lives. "We are here for truth and we are here for justice for these four witnesses." The focus of defense counsel's closing argument, also not surprising because Obi did not testify or present alibi evidence, was (i) to emphasize contradictions in the eyewitness testimony, particularly Bogan's admission that her pretrial identification of Obi might have been a mistake; (ii) to accuse Little Rock Police Officers of preparing contemporary reports that included mistakes and did not include aspects of their trial testimony, and conducting a faulty investigation that did not seek a warrant to search Obi's residence or check on the three kids left alone in Bogan's residence in a high crime area; and (iii) to criticize the government's attorneys for telling Bogan "if she doesn't appear in court, she can be arrested" and to "[t]hink about your kids." The government's rebuttal responded to these issues.

-4-

Neither side objected to any of these closing arguments, which take up 38 pages of the 339-page trial transcript. Now, on appeal, new appellate counsel for Obi argues the government in closing argument made no less than six "inflammatory, improper, and prejudicial statements" that deprived Obi of his right to a fair trial. This argument implicitly accuses the district court of repeatedly failing to exercise its broad discretion to control closing argument. See United States v. Levering, 431 F.3d 289, 293 (8th Cir. 2005), cert. denied, 547 U.S. 1185 (2006). Obi did not contemporaneously object, so we review each specific contention for plain error. United States v. Patterson, 684 F.3d 794, 799 (8th Cir. 2012), cert. denied, 568 U.S. 1148 (2013). "[W]e will only reverse under exceptional circumstances." United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993) (declining to reverse despite closing argument that "push[ed] the case to the very brink of mistrial"). To obtain relief on this ground, Obi must show "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." United States v. Mullins, 446 F.3d 750, 757 (8th Cir.), cert. denied, 549 U.S. 923 (2006). Here, there was no plain error. See United States v. Olano, 507 U.S. 725, 736 (1993); Fed. R. Crim. P. 52(b).

The statements under attack all came during the government's rebuttal closing argument. First, Obi challenges statements that allegedly denigrated defense counsel, contrary to our divided panel decision in United States v. Holmes, 413 F.3d 770, 775 (8th Cir. 2005) ("statements are highly improper [if] they improperly encourage the jury to focus on the conduct and role of [defendant's] attorney rather than on the evidence of [defendant's] guilt"). Specifically, Obi challenges the prosecutor saying during rebuttal that defense counsel's closing argument had "done some classic things here . . . like a classic throw everything I can against the wall, hope something sticks . . . [t]hrow some red herrings out there," saying "[s]o this nonsense about where's the search warrants and where's the phone warrant," and improperly suggesting that Bogan had colluded with the defense by saying, "Now, I find it interesting that she had actually talked to defense more than she talked to us . . . ."

The context of these remarks and the rebuttal in <u>Holmes</u> were very different. In <u>Holmes</u>, the defendant had testified, providing an alternative explanation to the police officers' incriminating testimony, so prejudicial comments about defense counsel raising a "red herring" and needing to "get his stories straight" were likely to improperly strengthen the officer's incriminating interpretation in a case where "the government's case was less than overwhelming." 413 F.3d at 775-76. Here, the prosecutor's rebuttal was aimed at persuading the jury that defense counsel's criticism of the police for not getting a warrant, and criticizing the eyewitnesses for traveling too far to get milk for an infant, were irrelevancies -- "red herrings" -- that should not distract the jury from the government's eyewitness testimony that Obi was the shooter and evidence that the shell casings came from the shooter's gun.

We have previously held that the term "red herring" is not improper if used "to argue that some of the issues raised by the defense were not central to the ultimate finding of guilt." <u>United States v. Shan Wei Yu</u>, 484 F.3d 979, 986-87 (8th Cir. 2007), citing <u>United States v. Milk</u>, 447 F.3d 593, 604-06 (8th Cir. 2006) (Gruender and Colloton, J.J., concurring). The prosecutor's rebuttal plainly passes that test. <u>See</u> <u>Patterson</u>, 684 F.3d at 799 (distinguishing <u>Holmes</u>). The comment regarding Bogan talking to defense counsel more than government attorneys was a fair reply to defense counsel's suggestion that the government had improperly coerced Bogan to testify. These were competing explanations of Bogan's obvious discomfort and ambiguous statements when testifying. Viewed individually or cumulatively, these comments did not improperly encourage the jury to focus on the conduct of defense counsel rather than on the evidence of Obi's guilt. The district court did not abuse its discretion, much less commit plain error, when it did not *sua sponte* strike these comments. "It is not improper for the government to comment on its interpretation of the evidence," <u>United States v. Jewell</u>, 614 F.3d 911, 928 (8th Cir. 2010), <u>cert. denied</u>, 562 U.S. 1290 (2011), nor "on the strength or credibility of the defense case," <u>United States v. Hunter</u>, 770 F.3d 740, 745 (8th Cir. 2014), <u>cert. denied</u>, 575 U.S. 1020 (2015).

Second, Obi argues the prosecutor's rebuttal improperly appealed to the passion and prejudice of the jury when he argued:

> This guy [Obi] in this picture smirking this way thought he got away with what he did that night. Shot at four people, shot at a car, he took off with a gun, got rid of the gun. He didn't think about a federal charge on ammunition that night. . . . That's why we have this law and that's why he should be found guilty because he thought he got away with it."

After summarizing the trial evidence, the prosecutor said:

> That's the truth of what happened in this case. You know it. You heard it from these witnesses. You've seen it in this evidence. Now comes the justice. Justice for Little Rock, justice for the community, justice for these four people sitting here who suffered through this that night. Their justice. This is the only chance to hold him accountable, and that's what I'm asking you to do. You go back there, you work together, you see the evidence, you see the truth. And you find him guilty.

"[U]nless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." United States v. Johnson, 968 F.2d 768, 770 (8th Cir. 1992) (quotation omitted). In Johnson, applying this standard, we held that the prosecutor's appeal to the jury to "stand as a bulwark against the continuation of what Mr. Johnson is doing . . . putting this poison on the streets," was unduly improper and inflammatory. Id. This is a fact intensive inquiry. If an attorney's remark, in context, simply "urge[d] a conclusion based on the evidence," rather than referring to larger societal problems, it "is not improper." United States v. Felix, 867 F.2d 1068, 1075 (8th Cir. 1989). Here, the prosecutor's context was to argue that the four eyewitness victims who testified to the trauma Obi inflicted deserved justice. This argument focused on the facts of the case; it was not an exceptional circumstance warranting a new trial on plain error review. Cf. United States v. Alaboudi, 786 F.3d

1136, 1145 (8th Cir. 2015), where we concluded there was no plain error despite the prosecutor urging the jury to "speak for" or "stand up for" victims who did not testify.

Third, Obi argues the prosecutor's rebuttal improperly injected his personal opinion when he said, after again summarizing the eyewitness testimony, "Ladies and gentlemen, I think it's true, I think the truth is there that he's the shooter." Obi cites United States v. Singer, where we noted that "a personal expression of a defendant's culpability, which inserts an extraneous and irrelevant issue before the jury, is particularly objectionable and highly improper when made by the prosecutor." 660 F.2d 1295, 1303 (8th Cir. 1981) (quotation omitted) (cleaned up). The remark at issue in Singer was made during the government's initial closing argument. We upheld the denial of defendant's motion for a mistrial, concluding that, "[f]airly read, this comment refers to the government's evidence and introduces the government's theory of the case." Id. at 1304. Here, there was no motion for mistrial, and the comment was made in the midst of the prosecutor's lengthy argument based on the trial evidence. Cf. United States v. Griffin, 437 F.3d 767, 770 (8th Cir. 2006).

In United States v. Plumley, defendant argued the prosecutor erred in rebuttal by saying: "Here's what happened in my view. The defendant lied to his mother. He lied to his girlfriend. He lied to his probation officer." 207 F.3d 1086, 1094 (8th Cir. 2000). We held there was no improper vouching, first, because the remark "is more plausibly read as the equivalent of [the prosecutor] saying 'Here is what the evidence established' than as constituting an unvarnished expression of his personal belief in [the defendant's] guilt," and second, because "if in fact [the remark] crossed over into the gray zone . . . [it] was at most harmless error." Id. (cleaned up). We conclude both reasons apply in this case. In context, reasonable jurors will interpret the statement, "the truth is there," as meaning, "the truth is in the evidence I just discussed," which is not improper.

For these reasons, the district court did not abuse its broad discretion to control closing arguments when it did not *sua sponte* question the statements first challenged on appeal. Cf. United States v. Young, 470 U.S. 1, 10-13 (1985).

### III. The Sentencing Issue

At sentencing, the district court overruled Obi's objection to a four-level enhancement for possessing ammunition in connection with another offense, USSG § 2K2.1(b)(6)(B), resulting in an advisory guidelines sentencing range of 63 to 78 months imprisonment. The United States urged an upward variance to the statutory maximum sentence, 120 months imprisonment. Obi urged a within-range sentence, arguing the seriousness of his offense was taken into account in the guidelines calculation, and noting his mental and emotional health issues and the support of his parents. After hearing argument, the district court varied upward and sentenced Obi to 96 months imprisonment "due to the violent nature surrounding this offense" and Obi's "history of gun possession." Responding to Obi's mental health issues, the court imposed substance abuse and mental health treatment as special conditions of his supervised release.

On appeal, Obi argues the district court abused its discretion by imposing a substantively unreasonable sentence. See United States v. Thibeaux, 784 F.3d 1221, 1227 (8th Cir. 2015) (standard of review). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations omitted). It is an "unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range -- as substantively unreasonable." Id. at 464 (quotation omitted).

Obi argues the district court abused its discretion in imposing a substantial upward variance because the factors emphasized -- the "violent nature surrounding this offense" and Obi's "history of gun possession" -- were accounted for in calculating his advisory guidelines range. We have repeatedly stated that "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance." United States v. David, 682 F.3d 1074, 1077 (8th Cir. 2012). Here, the district court explained that the 18-month upward variance was:

> justified and imposed due to the violent nature surrounding this offense. There were four people in the car. My memory of the evidence was that a bullet hole passed through the driver's side window three or four inches forward of . . . where [Williams's] temple would have been located. That combined with the history of gun possession in this case leads me to believe that Mr. Obi is a danger to the community.

This reflected proper consideration of "the need for the sentence imposed to protect the public from further crimes of the defendant." 8 U.S.C. § 3553(a)(2)(C). The district court has wide latitude to weigh the 18 U.S.C. § 3553(a) factors and assign some factors greater weight than others. Thibeaux, 784 F.3d at 1227. There was no abuse of discretion.

## IV. Conclusion

The judgment of the district court is affirmed. We deny Obi's motion for appointment of new appellate counsel.

_____