# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1622

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald Harris

*Defendant - Appellant*

_____

No. 23-2307

_____

United States of America

*Plaintiff - Appellee*

v.

Carl Murphy, also known as P., also known as C-Note

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: March 13, 2024
Filed: May 7, 2024
[Unpublished]

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

PER CURIAM.

Ronald Harris and Carl Murphy were each convicted of conspiracy to distribute a controlled substance. The district court[1] sentenced Harris to the statutory mandatory minimum term of imprisonment of 60 months and Murphy to a within-Guidelines sentence of 375 months' imprisonment. Harris appeals, contending the government breached its plea agreement with him when it refused to file a motion pursuant to 18 U.S.C. § 3553(e). Murphy also appeals, asserting the evidence is insufficient to support his conviction. We affirm.

Murphy and Harris, among others, were charged with conspiracy to distribute controlled substances (fentanyl and heroin), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846. Harris pled guilty pursuant to a plea agreement while Murphy proceeded to trial. Murphy's first trial ended in a hung jury. After meeting with the prosecutor to prepare for Murphy's retrial, Harris told the prosecutor that he would not testify if called as a witness. The government did not call Harris during the trial.

At trial, the government presented evidence of Murphy's involvement in a drug trafficking organization in the Des Moines, Iowa, metro area over a two year period. The investigation included pen register and trap and trace warrants, GPS data, evidence obtained during a traffic stop of a co-conspirator, search warrants on cell phones seized from members of the organization, pole camera footage near Murphy's residence, and wiretaps of six telephones. More specifically, Task Force Officer Blaine Shutts, with the Federal Bureau of Investigation, explained to the jury how he began investigating street-level heroin dealers in Des Moines, which led him to Murphy as several of the dealers' main source of supply. Investigators used the information gathered to show when dealers stopped by Murphy's house near

_____
[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

-2-

Chicago, Illinois, before driving to Des Moines. When they arrived back in Des Moines, text messages with "fire in" were sent out, which law enforcement officers interpreted as meaning they had heroin available for sale.

One of the dealers and co-defendant, Malek Holmes, testified that he has known Murphy his entire life. Holmes testified that he and Murphy were members of a Chicago criminal street gang known as the Black P. Stone Nation. Holmes identified Murphy's position in the gang as "The P" or "The Prince"—meaning the leader. Significant to the charged conspiracy, Holmes testified that his main source of supply was Murphy and that he and other dealers would visit Murphy every two to three days or whenever they needed to get a supply of heroin to sell. On each trip, the street dealers picked up at least 100 grams of heroin with 1,000 grams being the largest amount Holmes ever obtained from Murphy on a trip.

At the close of the evidence, Murphy moved for a judgment of acquittal, arguing Holmes's testimony lacked credibility and the government failed to meet its burden of proving Murphy was involved in a heroin conspiracy. In denying the motion, the court found "abundant evidence" aside from Holmes's testimony to submit the case to the jury. The evidence recounted by the district court included Muphy's post-<u>Miranda</u> statements, Murphy's recorded jail call, statements Murphy made while in jail, the pole cameras, the wiretaps, and Murphy's statements on the phone to his wife recorded during his post-<u>Miranda</u> debrief. The jury convicted Murphy of conspiring to distribute 1,000 grams or more of heroin.

At his sentencing, Murphy urged the court to vary downward from the applicable Sentencing Guideline range, arguing his role in the drug trafficking organization was overstated by the government and there was "a minuscule amount of evidence" to support the claim that Murphy was the leader. The court disagreed, finding Holmes's trial testimony credible and the evidence sufficient to demonstrate Murphy was the leader of a massive heroin and fentanyl operation run by the Black P. Stone Nation. The court noted that based on the evidence presented at trial— including the communications intercepted on wiretaps, the information retrieved

from pole cameras, and the cell phone location data—there was "no other explanation" for the evidence and co-conspirator conduct other than Murphy was the leader of the drug trafficking organization charged by the government and submitted to the jury. After calculating Murphy's advisory Sentencing Guidelines range at 360 to life, the district court adopted the government's sentencing recommendation of 375 months, in part, because during the prosecution and investigation, "Nearly every aggravating factor that could be involved was involved in this case."

At Harris's sentencing, the government did not file a motion for substantial assistance under 18 U.S.C. § 3553(e) because Harris refused to testify at Murphy's retrial. Prior to the retrial, the government advised Harris that it would not be filing the motion if he persisted in his refusal to testify. Harris believed the plea agreement merely required him to testify truthfully if he was called as a witness and since he was not subpoenaed or called to testify at the trial, he cannot be found to have violated the plea agreement's terms. The district court rejected Harris's arguments and found the government did not act in bad faith by refusing to file a motion pursuant to § 3553(e) because Harris did not fulfill his obligation to "fully cooperate with the Government" and "provide complete and truthful information to, among other things, any court."

Harris appeals the district court's determination that the government did not breach the plea agreement, and Murphy challenges on appeal the sufficiency of the evidence to support his conviction.

A.     Harris – Plea Agreement Terms

Harris argues the government's refusal to file a substantial assistance motion under 18 U.S.C. § 3553(e) violated the plea agreement and his due process rights. A plea agreement is breached when a plea rests in any significant way on a prosecutor's promise that goes unfulfilled. Santobello v. New York, 404 U.S. 257, 262 (1971). We review *de novo* disputes regarding the interpretation of a provision

-4-

in a plea agreement. United States v. Collins, 25 F.4th 1097, 1100 (8th Cir. 2022). When doing so, we view the agreement as a whole and discern the parties' intent according to basic principles of contract law. United States v. Thomas, 58 F.4th 964, 971 (8th Cir. 2023).

Here, the government did not break any promise. The plea agreement required Harris to "fully cooperate" with the government and "provide complete and truthful information to . . . any Court." The terms of the agreement advised Harris that the failure to comply with this obligation would constitute a material breach of the agreement and that the decision to file a motion at sentencing was "in the sole discretion of the United States Attorney." Harris told the prosecutor that he would not testify at Murphy's retrial. In response, the prosecutor put Harris on notice that she would deem his refusal to testify at trial as a breach of the plea agreement. By telling the prosecutor that he would not testify if called as a witness at trial, Harris could not fulfill his obligation of providing complete and truthful information to the court. Further, the agreement vested full discretion with the government to decide whether Harris had complied with the specific terms of the plea agreement. Harris has failed to show the government's decision was irrational, motivated by bad faith, or based on an unconstitutional motive. See United States v. Vernon, 187 F.3d 884, 886-87 (8th Cir. 1999) (noting relief may be granted if the defendant shows the government's decision not to file a substantial assistance motion was based on an unconstitutional motive, the refusal was irrational, or the motion was withheld in bad faith).

B.      Murphy – Sufficiency of the Evidence

Murphy contends on appeal that the evidence presented at trial showed only a buyer-seller relationship and the mere association between certain members of the black community in Des Moines and a community elder in Chicago.

"Weighing evidence and determining credibility are tasks exclusive to the jury." United States v. Benedict, 855 F.3d 880, 885 (8th Cir. 2017) (quoting Nichols

v. Am. Nat'l Ins. Co., 154 F.3d 875, 884 (8th Cir. 1998)).  We review Murphy's challenge to the sufficiency of the evidence *de novo*, viewing the evidence and the jury's credibility determinations in the light most favorable to the jury's verdict. United States v. Obi, 25 F.4th 574, 577 (8th Cir. 2022).  We will reverse a jury verdict only if no reasonable jury could have found him guilty.  Id.

Unless a co-conspirator's testimony is "incredible or insubstantial on its face," the testimony, alone, is sufficient to support a conviction for conspiracy.  Benedict, 855 F.3d at 886 (quoting United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008)).  There is nothing in the record suggesting Holmes's testimony was not credible.  Contrary to Murphy's contention, Holmes's testimony was corroborated by other evidence demonstrating Murphy was a supplier for a heroin/fentanyl drug trafficking organization in Des Moines, Iowa.  At sentencing, the judge who presided over both trials expressly found Holmes's testimony credible and rejected Murphy's attempts to minimize his involvement.  Murphy's claims that the evidence showed only a buyer-seller relationship and did not prove his participation in the charged conspiracy is contradicted by the trial record.  Because sufficient evidence exists in the record to sustain Murphy's conviction, we will not set aside the jury's verdict.

For the foregoing reasons, we affirm the district court's judgments.

_____